ARNOFF v. WILLIAMS ET AL.

*Covenants — Building restrictions — Agreement against "more than
one residence building" — Four-suite apartment house not pro-
hibited, when.*

In an agreement entered into between the owners it is recited that
"whereas, after land upon a street is improved with fine build-
ings for residence purposes with the expectation that the neigh-
boring land will be put to the same uses, stores, factories or
nuisances are frequently. created and maintained to the detri-
ment and sudden depreciation of all neighborhood property;"
it is provided in such agreement, which is made a part of the
deeds from the owners of such land, that the property shall be
used for residence purposes only, that the same or any part
·thereof shall not be used for factories, manufacturing, store,
mercantile or business purposes, that no more than one resi-
dence building shall be located upon a lot or tract of land of
fifty feet in frontage and said depth, that any such residence
building shall be built at least forty feet from the line of the
street, and that no residence shall be built on the premises
costing less than $3,000. *Held:* Such restrictions do not pre-
vent the erection of a four-suite apartment house.

(No. 14980 — Decided April 11, 1916.)

ERROR to the Court of Appeals of Cuyahoga
county.

Defendants in error, other than James M.
Cassidy, owners of certain lots in the hamlet of
Lakewood, Cuyahoga county, brought an action in
the court of common pleas of that county to enjoin
Cassidy and plaintiff in error, Morris Arnoff, from
violating certain building restrictions and for other
relief. The court of common pleas held that plain-
tiffs below, H. L. Williams and others, were not

entitled to the relief prayed for and dismissed their petition.   On appeal to the court of appeals the case was heard upon the pleadings and an agreed statement of facts.   Defendant in error, James M. Cassidy, had sold to plaintiff in error, under a land contract, a tract of land 310 feet in length by 169 feet in depth, fronting on the north side of Clifton boulevard east of Nicholson avenue in the hamlet of Lakewood and known as sublots 5, 6, 7 and 8 and parts of sublots 4 and 9.   After the commencement of this action plaintiff in error completed the payments under the land contract and received a deed for the property from Cassidy, the deed, however, containing no restrictions whatsoever.   One Mary S. Bradford, the predecessor in title of both plaintiff in error and defendants in error, had owned a quantity of land fronting on the north and south sides of Clifton boulevard and other land on the south side of Lake avenue, which was subdivided into lots.   On March 16, 1900, she, the then owner of the lots now owned by plaintiff in error and defendants in error, and the owners of certain other property on the north and south sides of Clifton boulevard and on the south side of Lake avenue immediately east of Nicholson avenue, entered into two agreements, one relating to the use of the real estate fronting on Clifton boulevard and the other to the use of that on Lake avenue.   These agreements were thereupon recorded in the records of deeds and mortgages of Cuyahoga county, volume 765, at pages 486 and 487, respectively. The signing of these agreements was not attested by witnesses or acknowledged according to law.   It

is recited in the agreement relating to the Clifton boulevard property, the essential parts of which, including the restrictions, appear in the opinion, that the provisions of the agreement are for the benefit of the parties thereto, their heirs, executors, administrators and assigns, and that the parties bind themselves, their heirs, executors and administrators, for a period of fifty years, to a compliance with the provisions thereof. In all of the deeds to the grantees of Mary S. Bradford, except in three instances, where the provisions are slightly different but unimportant so far as this case is concerned, is the following:

"Together with all the benefits inuring to said premises, and subject to all the burdens or restrictions imposed thereon by two certain agreements entered into by grantor and other neighboring landowners, dated March 16th, 1900, and recorded in Volume 765 of the Records of Deeds and Mortgages of said county at pages 486 and 487 respectively; subject also to the following restriction, to-wit: That no residence shall be built on said premises costing less than $3,000.00. By accepting this deed grantee binds himself, his heirs and assigns, to the observance of said restrictions."

The same language is contained in the deed to Cassidy, the grantor of plaintiff in error, as well as in the deeds to the other defendants in error. At the time this action was brought plaintiff in error had commenced the erection of one four-suite apartment house on sublot No. 4 and another on sublot No. 5, and was proposing to build a similar apartment house on each of sublots Nos. 6, 7, 8 and 9.

The court of appeals, having found that plaintiff in error, at the time of the application for an injunction, had no actual notice of the restrictions in question, permitted him to complete and maintain the buildings partly erected on lots 4 and 5, and, having found as to the other buildings that the same would be in violation of the restrictions contained in the agreement of·March 16, 1900, relating to the use of the property on Clifton boulevard, referred to in the deeds of Mary S. Bradford and in the deed to Cassidy, ordered that he, plaintiff in error, be enjoined from building or completing a building on his lots except for a family residence and of the value of $3,000, and rendered judgment against him for costs.   Plaintiff in error in this court is challenging the order of the court of appeals as to the buildings on lots other than Nos. 4 and 5.

*Mr. A. E. Bernsteen* and *Mr. David Perris,* for plaintiff in error.

*Messrs. White, Johnson, Cannon & Neff,* for defendants in error.

NEWMAN, J.   The signing of the agreements of March 16, 1900, to which the predecessor in title of the parties to this action was a party, was neither attested by witnesses nor acknowledged according to law.   By force of the provisions of Section 8543, General Code, the agreements were concededly not entitled to record.   The mere recording of them had no legal effect and could not operate as constructive notice to prospective purchasers of the property to which their provisions related.   But in all the deeds

made by the common predecessor in title, and in the deeds to defendants in error, including the deed to Cassidy, the grantor of plaintiff in error, is this language:

"Together with all the benefits inuring to said premises, and subject to all the burdens or restrictions imposed thereon by two certain agreements entered into by grantor and other neighboring landowners, dated March 16th, 1900, and recorded in Volume 765 of the Records of Deeds and Mortgages of said county at pages 486 and 487 respectively; subject also to the following restriction, to-wit: That no residence shall be built on said premises costing less than $3,000.00. By accepting this deed grantee binds himself, his heirs and assigns, to the observance of said restrictions."

This reference to the agreements was sufficient to put the grantees upon inquiry, and they were chargeable with knowledge of the provisions which the agreements contained. It had the same effect as if the agreements were set out in full in the deeds. While it is true that no restrictions are mentioned in the deed to plaintiff in error, yet, as we have seen, the agreements were by reference incorporated in several deeds in his chain of title and he was bound by all they contained. Defendants in error unquestionably had the right to enforce against him the observance of the covenants contained in the agreements of March 16, 1900, relating to the property on Clifton boulevard, of which his lots were a part.

But the question is, Does the erection of a four-suite apartment house violate any of the restrictive

covenants? The pertinent provisions of the agreements of March 16, 1900, upon the violation of which this action was based, are as follows:

"Whereas, the value of land depends alike upon the uses and purposes to which the same is put and the uses and purposes to which the adjoining lands is put;

"And whereas, after land upon a street is improved with fine buildings for residence purposes with the expectation that the neighboring land will be put to the same uses, stores, factories or nuisances are frequently created and maintained to the detriment and sudden depreciation of all neighboring property;

"Now, therefore, the undersigned each in consideration of the promise of each other, being owners of land in the hamlet of Lakewood, county of Cuyahoga and state of Ohio, and fronting on Clifton boulevard, so-called, and being 375 feet southerly from and parallel with Lake avenue, and for the benefit thereof and for the benefit of each other, the heirs, executors, administrators and assigns severally bind ourselves, our heirs, executors, administrators and assigns that for the period of fifty (50) years from the date hereof the property now owned by the undersigned fronting as aforesaid and for a depth of one hundred and seventy-five (175) feet shall be used for residence purposes only, that the same or any part thereof shall not be used for factories, manufacturing, store, mercantile or business purposes; that no more than one residence building shall be

located upon a lot or tract of land of fifty (50) feet in frontage and said depth; that any barn which may be erected upon such lot shall be at least one hundred (100) feet from the street line; that any such residence building shall be built at least forty (40) feet from the line of said street and at least six (6) feet from the side line of said lots."

In the preamble is set forth the purpose of the agreement. It is to prevent land upon a street improved with fine buildings for residence purposes from being depreciated by the creation of stores, factories or nuisances in the neighborhood. Then in the agreement it is provided that the property "shall be used for residence purposes only." This is practically the same language used in the deed under consideration in *Hunt* v. *Held,* 90 Ohio St., 280, the holding in which case is conceded by counsel to be in accordance with the universal ruling as applied to such a restriction. We took the position there that the word "residence" was used in contradistinction to "business," and it was held that such a provision did not prevent the erection of a double or two-family house on the premises. This applies with equal force to the erection of a four-suite apartment house, which is the place of abode for four families. That the term "residence" is used in contradistinction to "business" is emphasized in the present case, for, after providing that the property shall be used for residence purposes only, the use of the property for certain other purposes named (factories, manufacturing, store, mercantile or business purposes),

is expressly prohibited. Again, it is to be presumed that the parties to the agreement knew the difference between an apartment house and a private residence to be used by one family, and if it had been their intention to exclude the former it seems to us that it would have been expressly excluded, as were factories, stores and business houses. The maxim *expressio unius est exclusio alterius* applies.

But it is urged that the language "no more than one residence building shall be located upon a lot or tract of land of fifty (50) feet in frontage and said depth" does not permit the erection of any building other than a one-family residence. In *Hunt* v. *Held, supra,* in the opinion, it is said: "If it had been intended that the building was to be for the use of one family only, words indicating such an intention would have been used, as is frequently done, such as 'a single residence,' 'a private residence,' 'a single dwelling house.'" It is insisted that the expression "one residence building," as used in the sentence under consideration here, is synonymous with the terms suggested in that opinion. Counsel claim that "one" qualifies "residence," and they would give the sentence the same meaning as if it had been written "no more than *a* one residence building." We do not think this is correct. It is to be observed that the expression "no more" is used. Counsel, in arriving at the meaning of the sentence, do not seem to have given any significance to the use of these two words. If it had been the intention of the parties to use "one residence" as a compound word re-

lating to the character and use of the building, "no more" would not have been used, at least not unless the article "a" preceded the expression "one residence." "More" relates to amount, number or quantity, and it is clear to us that the word "one" qualifies "building," and that the sole purpose of this provision was to limit the number of the buildings which were to be located on each fifty-foot tract of land, viz., one building, to be used for residence purposes and not for business or any of the purposes expressly prohibited by the terms of the agreement. The language "any such residence building shall be built at least forty (40) feet from the line of said street" has to do with the location of the building, and the provision "no residence shall be built on said premises costing less than $3,000.00" fixes the minimum cost of each building on the lot. It may be noted, however, that the cost of the buildings erected and proposed to be erected by plaintiff in error is not at issue.

Giving effect, then, to what we consider the plain intention of the parties, as gathered from all the provisions of the agreement, our holding is that the erection of the four-suite apartment houses by plaintiff in error is not in violation of any of the restrictive covenants. The judgment of the court of appeals, therefore, will be modified to conform with our holding.

*Judgment modified, and affirmed as modified.*

Johnson, Donahue, Wanamaker, Jones **and** Matthias, JJ., concur.