KASCH *v.* JOECKEL ET AL.
KASCH *v.* WEBSTER ET AL.
KASCH *v.* APELBAUM.
KASCH *v.* WOLFORD ET AL.

(Decided January 2, 1929.)

*Messrs. Beery, Sheppard, Meisner & Pool,* for plaintiff.

*Messrs. Benner, Harter & Watters, Messrs. May & May,* and *Messrs. Harris & Holub,* for defendants.

PARDEE, J. These cases are here on appeal, and were tried and submitted together, by agreement of the parties.

The several actions seek the enforcement of a building restriction imposed by deeds upon the defendant's lots, the plaintiff and defendants owning lots in the same allotment, and the restriction having been created for the benefit of all owners of lots in the allotment.

The defendants have erected upon the several lots owned by them single-car garages, built of wood, one story high, with flat roofs, and with the usual number of doors and windows. Two of the garages are not connected with the residences upon said lots in any way; one of the other garages has a very slight connection with the residence erected

on that lot; and the other garage is connected at one corner thereof, in a substantial way, with one of the corners of the residence erected on that lot.

There are no questions before us except the single one: Does the maintenance of these several garages violate the common restriction, to wit, ''That no barn or other similar outbuilding shall be built upon said premises?''

The plaintiff does not question the right of the defendants to erect and maintain on their several lots garages connected with and as parts of their dwelling houses, and not erected as detached buildings; the plaintiff's contention being that a detached garage is an outbuilding similar to a barn and therefore prohibited by the foregoing quoted restriction.

In determining the proper meaning of this restriction it will be necessary to consider the physical structure of a barn and of a garage, and the respective uses to which these buildings are generally put, although the restriction itself relates to and prohibits only the erection of certain kinds of buildings, in contradistinction to the uses to which they may be put.

It is a matter of common knowledge that a building named a ''barn,'' erected in a city upon a residence lot, is generally so constructed as to provide a place for horses, or other domestic animals, and carriages, and also a place, generally above the first floor, for the storage of grain, hay, and straw, to be used for feed and other purposes, in connection with the animals kept for the benefit of the owners of said lots; the building thus constructed being not only a place of shelter for the grain, etc., but also a stable for the animals. This type of building is

usually divided on the first floor into places for the domestic animals kept therein, called the stalls, and a place for the storage of the vehicles used in connection with the horses sometimes kept therein. This style of building, so constructed and used, is generally at least one and one-half stories high, with a gable roof, and in connection with its use there has to be a place for the manure which comes from the stalls of said animals. A garage, in common use upon residence lots in a city, is generally a one-story building, with an opening at one end through which automobiles are driven, without any divisions therein, usually having a flat or a sloping roof, and used for the housing of automobiles.

The word "barn" has been given a judicial definition by several of the courts of this country. In the case of *Gross* v. *Whitelaw*, 20 C. C. (N. S.), 116, 31 C. D., 160, decided by the Circuit Court of Cuyahoga county, the court, on page 117 of the opinion, said: "The word 'barn' originally meant a place where farm produce is stored, but many people in the city call the building in which they keep their horses and carriages a barn, while more properly it should be called a stable, though some have both stables and carriage sheds or carriage houses, as they prefer to call them."

The Court of Appeals of Kentucky, in the case of *Saylor* v. *Commonwealth*, 22 Ky. Law Rep., 472, 57 S. W., 614, held: "Primarily, a barn is a building for the storage of grain and fodder, and a stable is a building for lodging and feeding horses and other domestic animals. But in this country the words are used interchangeably. It is stated in Webster's International Dictionary that 'in the United States

a part of a barn is often used for stables.' In this case the building burned was in fact a combination one, and we think it immaterial whether it was described in the indictment as a barn or a stable, or a barn and stable.''

And the Supreme Court of Iowa, in the case of *State* v. *Smith,* 28 Iowa, 565, in its opinion on pages 568 and 569, said: ''And it is or may be a barn, whether used to receive the crop, for the stabling of animals, or other purposes. Bouvier's Dict. Lexicographers tell us that it is a covered building for receiving grain, hay, or other productions of the farm, and that in the northern states of this country the farmers generally use these buildings also for stabling their horses or cattle, so that among them a barn is both a corn-house and a stable. Webster's Dict., title Barn. And, hence, most reasonably and naturally, one of the witnesses in the case says: 'Americans would call this building a barn, we (Germans) call it a good shed, or good cattle shed.' In accord with this testimony, we are justified in saying, is the experience and observation of us all. A building which in one part of our country would be known or called a shed, a stable, a barrack, in another would be styled a barn. Some include in the word 'barn,' as used in common conversation, buildings which others, by reason of differences of education, or other influences, would never think of thus designating.''

So, are the garages erected upon defendant's lots, ''outbuildings similar to a barn?''

We do not think so. Although a garage has many physical characteristics similar to those of a barn, it may be so said of a residence, or a business block,

or a church, and other structures; they all being buildings with side walls, roofs, and doors and windows. But a garage has many characteristics which make it very dissimilar to a barn; and it would be impossible to think of the word "barn," as generally used and commonly understood at the time of the imposition of the restriction, especially when contrasted with other buildings appurtenant to the ordinary residence, without imagining the presence of domestic animals as occupants thereof So, thinking of a barn, with its physical characteristics similar to a garage and the uses to which a barn is put, and thinking of a garage, with its many physical characteristics which are dissimilar to a barn and the purposes to which a garage is put, we are unanimously of the opinion that a garage is not an outbuilding similar to a barn.

The prayers of plaintiff's petitions are therefore denied, and the cases dismissed at plaintiff's costs.

*Petitions dismissed.*

WASHBURN, P. J., and FUNK, J., concur.

On Motion for New Trial.

BY THE COURT. On the motion for a new trial, we have, at the request of counsel for plaintiff, given the case of *Kasch* v. *Wolford et al.* further consideration and have examined the additional authorities cited, with the result that, under all the facts and circumstances shown by the record, we are still of the opinion that a private, one-story garage, attached to or built very near a dwelling house, is not

an outbuilding or similar to a barn, within the meaning of said restriction.

While the word "barn" was used to describe a building, *one* of the uses of which was to store vehicles, it was not used to describe a building used *exclusively* for the storage of vehicles. The modern word, which came into general use for the purpose of describing a building used *exclusively* for the storage of a certain kind of vehicle, known as an automobile, was the word "garage;" and, as at the time this restriction was inserted in the deeds, the word "garage" was the only word in use to describe a building used exclusively for the storage of such vehicles, it seems clear to us that, as that word was not used in this restriction, it was plainly not the intention of those who created the restriction to include therein a building used exclusively for storing such vehicles.

When this restriction was created, garages were in almost universal use in cities, and barns were not; and if it was intended to prohibit the use of these lots for a purpose so common and necessary, and so generally considered unobjectionable, such intention could have been easily expressed by the use of the word "garage." The use of the word "barn" at once brings to the mind of the average person a building universally regarded as undesirable on small city lots, and plainly indicates to such a person an intention not to include a garage in the prohibited class.

"If the common grantor in the case before us had in mind the exclusion of a building for the abode of more than one family, he should have used language that would have expressed such an intention.

The court cannot read it into the covenant." *Hunt v. Held*, 90 Ohio St., 280, at page 287, 107 N. E., 765, 768 (L. R. A., 1915D, 543, Ann. Cas., 1916C, 1051).

"Again, it is to be presumed that the parties to the agreement knew the difference between an apartment house and a private residence to be used by one family, and if it had been their intention to exclude the former it seems to us that it would have been expressly excluded, as were factories, stores and business houses. The maxim '*expressio unius est exclusio alterius*' applies." *Arnoff* v. *Williams*, 94 Ohio St., 145, at page 152, 113 N. E., 661, 663.

The acceptance of a deed containing restrictions creates a contractual relation, and the language employed to express the agreement of the parties must be construed in connection with all the facts and circumstances, and in case of doubt the construction most favorable to the free use of property should be adopted.

"Where the right to enforce a restriction contained in the conveyance as to the use of the property conveyed is doubtful all doubt should be resolved in favor of the free use thereof for lawful purposes by the owner of the fee." *Hunt* v. *Held*, 90 Ohio St., 280, 107 N. E., 765, L. R. A., 1915D, 543, Ann. Cas., 1916C, 1051.

*Motion for new trial overruled.*

WASHBURN, P. J., FUNK and PARDEE, JJ., concur.