Taft, J.
If we assume, as plaintiff contends and the courts below held, that the word “which” in restriction No. 1 modifies the word “lots,” the question still remains whether the use that defendants propose to make of a part of lot No. 29 will constitute a use for other than “residence purposes” within the meaning of those words in that restriction.
It is apparent that these restrictions contemplate use of part of a lot for a private lane or driveway as a permissible use. Thus, No. 3 speaks about “attached garages set back * * * 50 feet from the front property line”; and No. 4 refers to “lot or the dwellings or garage erected thereon. ’ ’ However, there is no requirement that garages be attached and there is no setback provision with respect to garages that are not attached.
There is obviously nothing in these restrictions that would prevent the owner of lot No. 30 from buying lot No. 29, building his house on No. 30 and using the east 25 feet of No. 29 as a driveway to that house. Also, there is obviously nothing in these restrictions that would prevent the owners of lots Nos. 30 and 32, after each had built a single dwelling on his lot, from together buying lot No. 29 and using any part thereof for a *329 driveway to their two dwellings. Under these restrictions, such use of lot No. 29 would obviously be a use “for residence purposes only” within the meaning of restriction No. 1 especially when read in the light of other restrictions. Thus, it is apparent that, in order to conclude that the use of lot No. 29 proposed by defendants is forbidden, it would be necessary to revise the words of restriction No. 1 so that they will require not merely a use “for residence purposes only” but “for residence purposes in the subdivision only.”
Defendants have offered and are offering to subject the six-acre tract to the same restrictions existing in the subdivision and to use their six-acre tract for only two single dwellings. Thus, that tract and its use will in effect differ only in size and location from lots Nos. 30 and 32 and their permitted use. If use of lot No. 29 as a driveway to and from lots Nos. 30 and 32 would be a use for residence purposes, it would seem to follow that its use as a driveway to and from the similarly restricted six-acre tract would be a use for residence purposes.
If it had been the intention of those who prepared these restrictions to require use not merely “for residence purposes only” but “for residence purposes in the subdivision only,” it is apparent that they did not express such an intention.
In paragraph two of the syllabus of Loblaw, Inc., v. Warren Plaza,, Inc., 163 Ohio St., 581, 127 N. E. (2d), 754, it is said:
“The general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate.”
This general rule has apparently been consistently approved in the decisions of this court to which we have been referred. See for example Hunt v. Held, 90 Ohio St., 280, 107 N. E., 765, L. R. A. 1915D, 543, Ann. Cas. 1916C, 1051 (“all doubt * * # resolved in favor of * * * free use” of property. Double house permitted on property restricted “for residence purposes only”), Arnoff v. Williams, 94 Ohio St., 145, 113 N. E., 661 (four-suite apartment building allowed where restriction against “no more than one residence building * * * upon * * * *330 lot * * * of 50 feet in frontage”), Kiley v. Hall, 96 Ohio St., 374, 117 N. E., 359, L. R. A. 1918B, 961 (business block allowed within 24 feet of street line where restriction “no dwelling shall be erected # * * containing less than six rooms; said dwelling to be located not less than 24 feet from the street line”), Frederick v. Hay, 104 Ohio St., 292, 135 N. E., 535 (double residence allowed where restriction against “not more than one dwelling * * * on * * * lot”). But cf. Arnoff v. Chase, 101 Ohio St., 331, 128 N. E., 319 (restriction that “one house only on each lot” held to prevent four-floor 36-suite apartment on two lots).
Certainly, that “general rule” would require the conclusion that the limited use that defendants propose to make of lot No. 29 will not violate restriction No. 1.
As to property in a subdivison, that is restricted to use for residence purposes only, there have been' decisions preventing its use as a means of ingress to and egress from property outside the subdivision that is not restricted to the same extent as the property within the subdivision. See 14 American Jurisprudence, 635, Section 255 and supplement thereto, 25 A. L. R. (2d), 904, 175 A. L. R., 1191, 1207, 39 A. L. R., 1083. However, we have found no eases involving a situation such as presented by the instant case where the property outside the subdivision will be restricted by its owners to the same extent as that within the subdivision. Hence, our conclusion is that the owners of a lot in a subdivision, which lot is restricted to use “for residence purposes only,” may use such lot as a means of ingress to and egress from adjoining land that they own outside the subdivision if they impose upon such outside land the same restrictions that are applicable to lots within the subdivision.
As to restriction No. 5, admittedly the 25-foot strip contains less than 20,000 square feet. The Court of Appeals recognized that nothing in the restrictions would prevent a sale of part of a lot to an adjoining lot owner if, after such sale, the lot of the grantor still contained 20,000 square feet, as lot No. 29 admittedly did after the sale of the east 25 feet thereof; but it apparently concluded that, by the sale of that 25-foot strip to someone other than plaintiff who was the owner of the adjoining lot No. 28, the seller created two lots out of original lot No. 29, and *331 that, since the 25-foot lot contained less than 20,000 square feet, there was a violation of restriction No. 5. Plaintiff’s argument in support of that conclusion is “that where there was formerly only lot No. 29, there are now two lots, one of which only contains * * * 5,500 square feet and the conveyance of such is in direct violation of restriction No. 5.”
A reading of the restrictions discloses no other prohibition against or limitation on the power to sell a part of a lot. If we should imply such a prohibition or limitation from the words of restriction No. 5, it is apparent that there is nothing in any of the restrictions which prohibits the sale of or limits the power to sell an easement in a lot so long as the easement does not contemplate and will not permit the use of the lot for other than residence purposes or for purposes otherwise prohibited in the restrictions. Hence, if this court should determine that there was a breach of restriction No. 5 when defendants acquired the 25-foot strip for the limited use that they intend to make of it, such breach would certainly be a very technical one. It could readily be avoided by defendants’ delivery of a quitclaim deed to their grantor for the 25-foot strip with a reservation therein to defendants of an easement for the uses that defendants propose to make of such 25-foot strip.
Part of the rights of an owner of the 25-foot strip would include the rights which could lawfully be fully provided for by such an easement. Hence, it appears to us that defendants should not have been enjoined from exercising such rights merely because the restrictions of the subdivision might have justified an injunction against them from exercising other rights as an owner with respect to the 25-foot strip.
Prom what we have said, it is apparent that it is our conclusion that, upon the condition of defendants making proper provision within a specified reasonable time for restricting the six-acre tract and the 25-foot strip in accordance with the allegations of defendants’ answer and their offer in the courts below and in this court, the injunction against their use of the 25-foot strip should have been denied. An injunction on defendants’ failure to comply with such a condition was all the relief to which plaintiff- was equitably entitled.
*332 It follows that the judgment of the Court of Appeals must be reversed and the cause is remanded to that court for further proceedings in accordance with this opinion.

Judgment reversed.

Matthias, Bell, Herbert and Peck, JJ., concur.
Weygandt, C. J., and Zimmerman, J., dissent.