Houk et al., Appellees, *v.* Ross, Appellant.

(No. 72-321—Decided May 2, 1973.)

*Amerman, Burt & Jones Co., L. P. A.,* and *Mr. Jacob F. Hess, Jr.,* for appellees.

*Messrs. Day, Ketterer, Raley, Wright & Rybolt* and *Mr. Clyde H. Wright,* for appellant.

CORRIGAN, J. Appellant's first two propositions of law deal with the reversal and entry of summary judgment by the Court of Appeals against the appellant-movant.

Appellant argues that reversal by an appellate court of an entry of summary judgment and the subsequent rendering of summary judgment against the movant, in a civil action, constitutes a violation of Section I of the Fourteenth Amendment to the United States Constitution and Article I, Section 12 of the Constitution of the state of Ohio, as a denial of ''due process,'' and the right to trial by jury under the Seventh Amendment to the United States Constitution.

Appellant also argues that in a civil action a Court of Appeals has no authority, upon appeal, to enter summary judgment *sua sponte,* but may do so only upon motion of a party; that no motion for summary judgment was made by appellees in the present case,

Considering, first, appellant's second argument, we refer to App. R. 12(B), which reads:

"* * * When the Court of Appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the Court of Appeals shall reverse the judgment or final order of the trial court *and render the judgment or final order that the trial court should have rendered,* or remand the cause to the court with instructions to render such judgment or final order * * *." (Emphasis added.)

That rule clearly indicates that the Court of Appeals has the authority to reverse a judgment or final order of a trial court and render the judgment or final order that the trial court should have rendered. In the absence of specific language to the contrary, the phrase "should have rendered" cannot be interpreted to extend authority to the Court of Appeals beyond that granted the trial court.

The trial court's authority in regard to summary judgment procedure in civil actions is set forth in Ohio Rules of Civil Procedure, Civ. R. 56.

Civ. R. 56(B), which provides for the rendering of summary judgment for the defending party, states only that the defending party "* * * may at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part * * *" of the claim, counterclaim, or cross-claim asserted against him. This rule neither specificially provides for summary judgment against the movant nor does it specifically prohibit such judgment.

Civ. R. 56(C), in setting out the standards for granting summary judgment, likewise fails to provide for the granting of summary judgment against the movant.

Three states, New York, Maryland and Wisconsin, do provide for the granting of summary judgment against the movant, either through specific language in summary judgment statutes or by rules of court. See annotation, 48 A. L. R. 2d 1188, 1197, and Later Case Service.

The relevant language in Civ. R. 56 consistently refers to a "motion" for summary judgment, and that a party may "move" for such a judgment. However, in view of the rule of construction expressed in Civ. R. 1(B), that "these rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice," we prefer to base our decision upon an examination of the constitutional limitations to the granting of summary judgment against the moving party rather than upon a technical interpretation of Civ. R. 56.

That question is one of first impression for this court. Only one Ohio appellate court has considered the issue. In *Napier* v. *Banks* (1967), 9 Ohio App. 2d 265, the Court of Appeals for Madison County held that the trial court had no authority, under former R. C. 2311.041, to enter summary judgment *sua sponte,* but may do so only upon motion of a party, and where one party, only, files such motion, the court may not, upon hearing and overruling the motion, enter summary judgment for the other party.

That case, however, was decided upon a technical construction of the then existing Ohio summary judgment statute, R. C. 2311.041, which has since been repealed and superseded by Civ. R. 56.

Civ. R. 56 is virtually identical to the federal rule, FRCP 56, after which it was patterned. There is some disagreement among the federal courts interpreting the federal rule as to the propriety of granting summary judgment against the movant. See 48 A. L. R. 2d 1191 *et seq.,* and Later Case Service; 6 Moore's Federal Practice (2 Ed.), Par. 56.12. The majority of the federal district and appellate courts have supported the position that summary judgment may be entered against the movant,* provided that care has been taken by the district court in determining that the party against whom summary judgment is

---

*See 48 A. L. R. 2d 1191, Section 3[b], and Later Case Service; 6 Moore's Federal Practice (2 Ed.), 2242, Par. 56.12, fn. 5.

rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law. 6 Moore's Federal Practice (2 Ed.), 2243, Par. 56.12..

The limitation upon federal courts, as to exercising care in determining whether the movant has had the opportunity to exercise his "due process" rights in meeting the proposition that there is no genuine issue of material fact to be tried, was established by the United States Supreme Court in *Fountain* v. *Filson* (1949), 336 U. S. 681.

That court, in a *per curiam* opinion, reversed an order for summary judgment entered by the Court of Appeals for the District of Columbia against the movant-defendant, Fountain, under a procedural situation similar to that in the present case. The Supreme Court's reversal, however, was based upon the fact that, although the Court of Appeals had agreed with the trial court's order of summary judgment for defendant upon the issue briefed and argued by the defendant in her motion for summary judgment, that court reversed and entered judgment against the movant-defendant upon the basis that another issue not argued or sought in the complaint, except as a prayer for "other relief," gave the plaintiff grounds for recovery.

In reversing that judgment, the Supreme Court stated:

"* * * We need not pass on the propriety of an order for summary judgment by a district court in favor of one party after the opposite party has moved for summary judgment in its favor, where it appears that there is no dispute as to any fact material to the issue being litigated. For here the order was made on appeal on a new issue as to which the opposite party had no opportunity to present a defense before the trial court. In *Globe Liquor Co.* v. *San Roman,* 332 U. S. 571 (1948), and *Cone* v. *West Virginia Paper Co.,* 330 U. S. 212 (1947), we held that judgment notwithstanding the verdict could not be given in the Court of Appeals in favor of a party who had lost in the trial court and who had not there moved for such relief. One of

the reasons for so holding was that otherwise the party who had won in the trial court would be deprived of any opportunity to remedy the defect which the appellate court discovered in his case. He would have had such an opportunity if a proper motion had been made by his opponent in the trial court. The same principle interdicts, *a fortiori*, the appellate court order for summary judgment here. Summary judgment may be given, under Rule 56, only if there is no dispute as to any material fact. There was no occasion in the trial court for Mrs. Fountain to dispute the facts material to a claim that a personal obligation existed, since the only claim considered by that court on her motion for summary judgment was the claim that there was a resulting trust. When the Court of Appeals concluded that the trial court should have considered a claim for personal judgment it was error for it to deprive Mrs. Fountain of an opportunity to dispute the facts material to that claim by ordering summary judgment against her. * * *''

The court's decision does not literally state that an entry of summary judgment against the movant is proper, but it does indicate that the test for determining whether "due process" rights have been violated is stated in the Federal Rules of Civil Procedure as the standard for granting summary judgment. The relevant language of FRCP 56(c) reads:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.* * * *'' (Emphasis added.)

Obviously, if it appears that a dispute exists as to any fact material to the issue being litigated, an entry of summary judgment against either party would clearly be erroneous, and constitute a denial of the right to a jury trial on that issue. In like manner, if both parties have had the opportunity to present the evidence permitted under the feder-

al rule as to every fact or issue material to the litigation, and it appears to the court, after construing the evidence strictly against both parties, that no genuine issues exist and that the nonmovant is entitled to judgment, then both parties' "due process" rights will be satisfied by the expediency of an entry of summary judgment against the movant.

This is the interpretation consistently given by the United States Court of Appeals, Second Circuit, which considered this question. *Local 33, Intl. Hod Carriers,* v. *Mason Tenders Dist. Council* (1961), 291 F. 2d 496; *First Natl. Bank in Yonkers* v. *Maryland Cas. Co.* (1961), 290 F. 2d 246; *Procter & Gamble Union* v. *Procter & Gamble Mfg. Co.* (1962), 312 F. 2d 181; *Intl. Longshoreman's Assn.* v. *Seatrain Lines* (1964), 326 F. 2d 916, 921; *Local 12298, Dist. 50, United Mine Workers,* v. *Bridgeport Gas Co.* (1964), 328 F. 2d 381, 386; *Stein* v. *Oshinsky* (1965), 348 F. 2d 999; and *Thompson* v. *New York Central Rd. Co.* (1966), 361 F. 2d 137, 144.

That view was expressed by Judge Medina in *Local 33, Intl. Hod Carriers, supra* (291 F. 2d 496), wherein he stated, at page 505:

"There remains the question whether there is authority to grant summary judgment for defendants in the absence of a cross-motion for summary judgment. It is Professor Moore's view that such a motion would be a mere formality and is unnecessary in a situation such as we have before us, where the proofs before the court show plaintiff has no case. Moore's Federal Practice, Vol. 6, pp. 2088-9. Although the writer of this opinion expressed a contrary opinion in 1948 as a district judge, *Truncale* v. *Blumberg,* D. C., 8 F. R. D. 492, he is glad to take this occasion to state that he has changed his mind. Especially where there are several motions by the respective parties and the evidence of the facts bearing on the issues arising out of the complaint is all before the court in affidavit form, it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have

been made had defendant made a cross-motion for summary judgment.''

In view of the federal decisions interpreting FRCP 56, this court is of the opinion that an entry of summary judgment against the movant in the instant case does not violate the moving party's ''due process'' rights, provided that all the evidence of facts material to the issue being litigated is before the court and is sufficiently argued to show that no genuine issue as to any material fact exists, and that the nonmoving party is entitled to judgment as a matter of law.

Since all the evidence necessary to a summary judgment decision in the present case was before the Court of Appeals, there has been no substantial prejudice to the appellant's rights shown which would constitute reversible error in connection with his first two propositions of law.

Appellant, in his third proposition of law, contends that the deed restrictions in question do not prevent the erection or use of a duplex or a two-family residence. The Court of Appeals, in reversing the trial court's judgment, held that such restrictions limit construction to single-family residences. We are of the opinion that that judgment is erroneous.

The Court of Appeals based its judgment in the present case on the authority of *Arnoff* v. *Chase* (1920), 101 Ohio St. 331, and *Johnston* v. *Parkin* (1928), 33 Ohio App. 174.

In *Arnoff* v. *Chase, supra,* this court, construing the language of a deed restriction providing for the building of '' '*** one house only on each lot; all lots are sold for residence purposes only * * *,' '' held that the proposed construction of a four-story apartment house designed to contain thirty-six apartments was in violation of the deed restriction. In so doing, the decisions in two prior cases were examined, namely: *Hunt* v. *Held* (1914), 90 Ohio St. 280, and *Arnoff* v. *Williams* (1916), 94 Ohio St. 145.

Paragraph one of the syllabus in *Hunt* states the gen-

eral rule of construction of deeds containing building restrictions:

"Where the right to enforce a restriction contained in the conveyance as to the use of the property conveyed is doubtful all doubt should be resolved in favor of the free use thereof for lawful purposes by the owner of the fee."

Paragraph two of the syllabus in *Hunt* holds:

"A clause in a conveyance restricting the use of the property conveyed 'for residence purposes only' does not prohibit the erection of a double or two-family house on the premises."

This court, in *Hunt,* was of the opinion that the word "residence" as used in the restriction was equivalent to "residential" and used in contradistinction to the word "business." More importantly, at page 283, the court stated:

"* * * The word 'residence' has reference to the use or mode of occupancy to which the building may be put. If it had been intended that the building was to be for the use of one family only, words indicating such an intention would have been used, as is frequently done, such as 'a single residence,' 'a private residence,' 'a single dwelling house.' "

In *Arnoff* v. *Williams, supra* (94 Ohio St. 145), the court, relying upon the rule of construction in *Hunt,* held that where an agreement containing building restrictions, including a provision that "* * * no more than one residence building shall be located upon a lot or tract of land of fifty (50) feet in frontage and said depth," is entered into between property owners and such agreement is made a part of the deeds of the property owners, the restriction does not prevent the erection of a four-suite apartment building.

In interpreting the clause, "no more than one residence building," the court, in *Arnoff* v. *Williams, supra.* examined the meanings of the words and their structure within the clause, explaining, at page 152:

"* * * If it had been the intention of the parties to

use 'one residence' as a compound word relating to the character and use of the building, 'no more' would not have been used, at least not unless the article 'a' preceded the expression 'one residence.' 'More' relates to amount, number or quantity, and it is clear to us that the word 'one' qualifies 'building,' and that the sole purpose of this provision was to limit the number of the buildings which were to be located on each fifty-foot tract of land, viz., one building, to be used for residence purposes and not for business or any of the purposes expressly prohibited by the terms of the agreement. * * *''

In applying those precedents to the case before it, the court, in *Arnoff* v. *Chase, supra* (101 Ohio St. 331), at page 334, stated:

"In each of the cases referred to there was involved simply the bald construction of the phrases quoted, with no extrinsic aids to construction other than such as appeared in the instruments of which the phrases were a part. However, even if we could confine our view within the narrow limits of the words themselves, the instant case could not be disposed of upon the authority of the cases cited, since the word 'house,' though in some connections used as synonymous with 'building,' is unquestionably used, and commonly, both in literature and in common speech, as the equivalent of that sort of a home technically known as a single family residence. The latter interpretation gains in force when it is observed that the term 'building' or 'structure' is used when it is desired to control the *place* of construction, and the phrase 'for residence purposes' when the general character of the occupancy is in question. The further and distinct limitation of each lot owner to 'one house only' was evidently inserted for another purpose. It would be hypertechnical to interpret that purpose as satisfied by the construction of as many abodes as can be arranged vertically or horizontally under a common roof."

Read in light of the decisions in *Hunt* and *Arnoff* v. *Williams, supra*, that statement by the court in *Arnoff* v. *Chase, supra,* can only be interpreted as a finding that the

language in question—"one house only on each lot"—was not ambiguous or uncertain and did not render the meaning of the deed restriction doubtful. The opinion, obviously, assumes that the rule of construction established in *Hunt* is not applicable.

The Court of Appeals, in *Johnston* v. *Parkin, supra* (33 Ohio App. 174), after examining *Arnoff* v. *Chase, supra,* stated, at page 176:

"By the foregoing language, the court said, in referring to deed restrictions, that the words 'house' and 'residence,' as used in common speech, are the equivalent of the home known as a residence occupied by one family."

That statement is incorrect, insofar as it refers to the meaning of "residence." The court, in *Arnoff* v. *Chase,* determined only that the word "house" was used "both in literature and in common speech, as the equivalent of that sort of a home technically known as a single family residence." That determination precluded application of the rule of construction announced in *Hunt, supra.*

Webster's Third New International Dictionary defines the word "house" to include:

"1 a: a structure intended or used for human habitation; a building that serves as one's residence or domicile esp. as contrasted with a place of business; a building containing living quarters for one or a few families * * *."

That definition, considered with the other extrinsic aids to construction and explanatory facts found by the trial court in the *Johnston* case, could lead to the implication that the word "house," as used in the instant deed restriction, was intended to, and did, convey the meaning of "one-family residence."

The term "residence," however, conveys no such implication. Webster's also defines "residence," in pertinent part, as "* * * the place where one actually lives or has his home as distinguished from his technical domicile * * * a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit * * * a building used as a home: dwelling * * *."

The term "residence" is not as specific in its meaning as the term "house," and in no way implies use as a "one-family dwelling," but rather implies a dwelling in which one normally lives, or the building used for such purpose. The term "residence" is, therefore, distinguishable from "house" and connotes a different, broader meaning in reference to "abode" or "dwelling."

In this case, appellant contends that the clause—"that not more than one residence shall be built upon any of said tracts"—refers to the number of residence buildings to be built on any of the tracts. The appellees contend that such language evidences an intent to limit the tracts to the construction of one single-family dwelling or residence building.

The Court of Common Pleas apparently found the language of the restriction in question to be ambiguous, and, in rendering summary judgment, agreed with appellant's interpretation.

The Court of Appeals, in reversing the judgment for the appellant and rendering summary judgment for appellees, adopted appellees' interpretation of the language.

The conflicting interpretations of the same language point out the ambiguity of the phrase, "not more than one residence."

In *Frederick* v. *Hay, supra* (104 Ohio St. 292), this court was presented with a similar conflict in the interpretation of a deed restriction which stated that "* * * not more than one dwelling shall be erected * * * on said lot." In holding that this restriction did not prohibit the construction of a double residence, the court stated in the syllabus:

"Where the words of a restriction contained in a deed of conveyance are equally capable of two or more different constructions, that construction will be adopted which least restricts the free use of the land. (*Hunt* v. *Held,* 90 Ohio St. 280, approved and followed.)"

In approving *Hunt,* the court, at page 297, also set out the following prerequisites for application of the rule established in *Hunt*:

"It is apparent from the language of the restriction, from the authorities cited, and from the different conclusions of the learned judges who have heretofore considered this case, that either construction may be justified and that neither may be accurately declared incorrect, and in the absence of any rule of construction operating in favor of or against the restriction a court would be left to guess at what was in the minds of the parties to the contract and what they meant to bind themselves to do and not to do, in making use of the words 'one dwelling,' and what warning or notice those words convey to subsequent purchasers and what restriction they impose upon their use of the land.

"But in view of the rule of construction announced by this court in the case of *Hunt* v. *Held, supra,* wherein this court declared that 'Where the right to enforce a restriction contained in the conveyance as to the use of the property conveyed is doubtful all doubt should be resolved in favor of the free use thereof for lawful purposes by the owner of the fee,' and the application of that rule to the restriction here under consideration, there remains nothing for this court to do other than to say that since the meaning of the language of the restriction is not certain, definite and clear, and is equally capable of either construction contended for, the doubt will be resolved against the restriction rather than in its favor, and the court will give to the language the meaning, of which it is equally capable, which least restricts the free use of the land."

In the instant case, this court is of the opinion that the restrictive language in question is also indefinite and capable of contradictory interpretations and, therefore, the language must be construed so as to least restrict the free use of the land.

The Court of Appeals felt that it was important to note that *Johnston* v. *Parkin, supra* (33 Ohio App. 174), was decided by the Court of Appeals for Summit County subsequent to the decisions of this court in *Hunt* v. *Held* (1914); *Arnoff* v. *Williams* (1916); *Arnoff* v. *Chase* (1920); *Hitz* v.

*Flower* (1922), 104 Ohio St. 47; and *Frederick* v. *Hay* (1922).

It should be noted that subsequent to the decision in *Johnston* this court has, in *Loblaw* v. *Warren Plaza* (1955), 163 Ohio St. 581, and *Bove* v. *Giebel* (1959), 169 Ohio St. 325, restated and followed the rule announced in *Hunt* v. *Held* and subsequent cases.

Likewise, the Sixth Circuit Court of Appeals, in *University Hills* v. *Patton* (1970), 427 F. 2d 1094, 1099, has stated that the rule, announced in *Hunt,* is the general rule of construction of deed restrictions in Ohio, as well as most other states, and was designed to implement the policy favoring the free and unrestricted use of land.

In view of this long-standing rule of construction, this court is bound to interpret the restriction in question in that manner which least restricts the free use of the land. Following the reasoning in *Arnoff* v. *Williams, supra,* and *Frederick* v. *Hay, supra,* we hold, therefore, that the clause, "that not more than one residence shall be built upon any of said tracts," only prohibits the construction of more than one residence building on any of said tracts of land, and does not prohibit the construction of a multiple-family dwelling. If it had been the intent of the sellers to limit construction to single-family residences or dwellings, that restriction should have been specifically stated. *Hunt* v. *Held, supra,* and *Arnoff* v. *Williams, supra.*

Appellant's last contentions are that the construction and use of as many as 13 duplex residences in the Whipple Heights Allotments and a total of 20 in the immediate vicinity have so changed the character of the neighborhood that the restriction in question is valueless to the property owners, and that they have waived their right to assert it.

The Court of Common Pleas found from the evidence presented that the character of the neighborhood "* * * has changed so that no valid objection may be made to the defendant's construction of a duplex residence in Whipple Heights Allotment * * *."

Upon the same set of facts, the Court of Appeals found

the construction of nine duplex residences in Whipple Heights "* * * not to constitute such a change of conditions and character of the neighborhood in Whipple Heights Allotment as to warrant a court of equity to hold that no valid objection may be made by those who have bought lots and constructed homes relying upon such covenants and will be damaged by breaches thereof by other lot owners."

This court is not required to weigh the evidence in the present case if there is sufficient evidence to support the judgment of the Court of Appeals. We find that the record contains enough evidence to sufficiently enable a court to determine that there was no substantial change in the character of the neighborhood.

For the foregoing reasons, the judgment of the Court of Appeals, rendering summary judgment for appellees, is reversed, and the judgment of the Court of Common Pleas, granting appellant's motion for summary judgment, is reinstated and affirmed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.