OPINION
Defendants-appellants Homer Richards and Sandra L. Merrill appeal the February 15, 2001 Judgment Entry of the Stark County Court of Common Pleas, which restrained them from constructing a planned garage or any building not in conformity with certain deed restrictions. Plaintiffs-appellees are Nancy C. Postiy, Trustee of the Nancy C. Postiy Revocable Living Trust, Dated June 24, 1996, and William Postiy.
 STATEMENT OF THE FACTS AND CASE
In 1990, appellants purchased a home at 1666 Steiner Street NW, North Canton, Ohio, aka Lot 8, Lagerfeld Properties. Appellee Nancy Postiy lives in Lagerfeld Properties across the street from appellants' property. Appellee William Postiy also owns a home in Lagerfeld Properties.
In 1999, appellants moved from their Steiner Street property and listed it for sale. Despite several price reductions, appellants received no offers to purchase the property. Appellants determined the fact the residence only had a two car garage presented a major obstacle in selling the home.
In August, 2000, appellant Richards contacted home builder Tim Fleishour. Mr. Fleishour recommended the construction of a detached garage, and prepared plans for the proposed garage. The construction plans were submitted to, and approved by, the Plain Township Zoning Board.
Appellants' property was subject to certain deed restrictions. Paragraph no. 2 of said restrictions requires approval by the "Allotter," Clark-Gibon Development Corp., of any building or construction on the property. Appellant Richards sought approval for the garage project from the developer, Mark Clark. Mark Clark had no objection as long as the neighbors were also agreeable.
Appellants contacted Nancy Postiy and her husband, Ronald Postiy, for their approval. The Postiys objected, believing the proposed garage violated Paragraph no. 7 of the deed restrictions.
On January 16, 2001, Nancy C. Postiy, Trustee of the Nancy C. Postiy Revocable Living Trust Dated June 24, 1996, and William Postiy filed a complaint for injunction and a motion for a temporary restraining order to enjoin construction of the "garage outbuilding." Shortly before the filing of the complaint, an "Amendment to Restrictions for Lots 1-10 Lagerfeld Properties" was filed with the Stark County Recorder. The amendment was to Paragraph no. 7 of the deed restrictions, and specifically included a garage as an outbuilding as used therein.[1]
The trial court granted appellees' motion for a temporary restraining order, conditioned on appellees posting a bond of $500. A hearing was held on February 2, 2001, which the parties stipulated would resolve all issues on the complaint and the injunction. On February 15, 2001, the trial court entered judgment for appellees, enjoining appellants from constructing the planned garage or any building not in conformity with the restrictions. It is from that judgment entry appellants prosecute their appeal, assigning as error:
 THE TRIAL COURT ERRED IN FINDING THAT THE PROPOSED GARAGE CONSTRUCTION VIOLATED THE ORIGINAL DEED RESTRICTION.
 THE TRIAL COURT ERRED IN FINDING THE AMENDED DEED RESTRICTION EFFECTIVE TO BAR CONSTRUCTION OF THE PROPOSED GARAGE.
 I
At issue is the interpretation to be given the term "outbuilding" in Paragraph no. 7 of the Restrictions for Lots 1-10, Lagerfeld Properties. Paragraph no. 7 provides:
 With Allotter's approval, there may be permitted an outbuilding incidental only to the residential use of the premises, provided said structure is of material and a design that is harmonious and compatible with the dwelling. Any said outbuilding shall be situated in back of the rear line of the dwelling and shall be located so that it is not conspicuously visible from the street and shall be located no closer than 25 feet to side lot boundary lines. Pre-constructed storage sheds of metal or wood or storage sheds without a foundation are specifically not permitted. Said structure shall have maximum square footage of 250 feet and must be landscaped.
The term "outbuilding" is not defined within the restrictions. Appellants assert because the term "outbuilding" is ambiguous or capable of contradictory interpretation as it is used within the context of the restrictions, it must be construed against the restriction and in favor of the free use of land.[2]*[3]
In general, restrictive covenants are enforceable as long as they do not violate public policy, and provide for a general plan or scheme to make the property more attractive for residential purposes.[4]*[5]
"The court must construe the language of the covenant by giving it its common and ordinary meaning in light of the factual circumstances surrounding the writing of the restrictive covenant."[6]
In factual support of their argument, appellants cite the testimony of home builder Tim Fleishour and realtor Sandra Guiley regarding the meaning of the term "outbuilding," ". . . as understood in the parlance of real estate transactions."[7]
Mr. Fleishour testified:
 A. Generally, an outbuilding is a building that is a smaller, temporary-type structure with no foundation, no footers. A building that's built to store lawn furniture, lawn mowers, things like that.
 Q. Is that used in your industry to describe a detached garage?
A. No.[8]
Ms. Guiley testified:
 Q. In the real estate industry or in terms of your work, how is the term outbuilding used?
 A. As storage. Normally, if there is an outbuilding — or a building where you can get a car into it and get a car to it and store in it, that wouldn't be considered an outbuilding. It's normally perceived as a small, shed-like structure.
 Q. The garage which you see here in Defendant's Exhibit 2 would not be referred in your industry to as an outbuilding?
A. No. It would be referred to as a detached garage.[9]
Appellees note both Mr. Fleishour and Ms. Guiley have personal interests for supporting appellants' position, and said interests may affect the weight given to their testimony by the trial court.[10]
Appellees offered, and the trial court considered, three dictionary definitions of "outbuilding." They are:
1) "a subordinate building near a main building"[11];
 2) "a structure, as a garage or barn separate from the house or main building"[12]; and
 3) "a detached building subordinate to a main building."[13]
In addition to these definitions, appellants offer the definition of "outbuilding" found in Black's Law Dictionary, which provides:
 "Something used in connection with a main building. A small building appurtenant to a main building, and generally separated from it; e.g., outhouse; storage shed."
Only if the term "outbuilding" is indefinite, doubtful or capable of contradictory interpretation does an ambiguity arise, which then requires the construction which least restricts the free use of the land.[14]
We must begin by looking to the ordinary and plain meaning of the term as it is commonly used. The fact a particular science or field attaches a certain interpretation to a term does not necessarily change how that term is commonly used. What a term "generally" or "normally" means in real estate parlance does not necessarily create an ambiguity as to how the term is commonly used. As such, we are less concerned about the interpretation given to the term by the home builder or realtor than we are to the meaning given by an ordinary buyer or seller of property. If the term "outbuilding," as commonly used, includes a detached garage, the testimony of Mr. Fleishour and Ms. Guiley cannot be used to create an ambiguity where none otherwise exists. By its dictionary definitions, outbuildings include a large array of different types of buildings. The common characteristic shared by those buildings is that they are separate or detached from the primary building and subordinate thereto. It is the status of being detached and subordinate which renders the structure an outbuilding, rather than the use of the building which is detached and subordinate.
We find the fact "pre-constructed storage sheds" are specifically referenced in Paragraph no. 7 does not serve to limit the type of outbuildings prohibited therein. The mention of a specific type or subset of outbuildings does not serve to limit the entire set of outbuildings to the specific type mentioned in the absence of clear language of limitation. No such limiting language appears in Paragraph no. 7.
Appellants cite Kasch v. Joeckle[15] as authority for the proposition an unconnected garage is not an outbuilding for purposes of building restrictions. In Kasch, the appellate court was called upon to determine whether various garages, some attached and others not attached, violated a restriction, "[t]hat no barn or other similar building shall be built upon said premises."[16] We do not disagree with the Kasch court's decision a garage is not an outbuilding similar to a barn.[17] TheKasch court's explanation of the origin of the word garage must be read in the context of whether it was `similar to a barn' and not whether it was an outbuilding. We find appellants' reliance on Kasch unpersuasive.
Last, appellants maintain the fact Paragraph no. 7 was amended immediately prior to commencement of the subject litigation to specifically include garages within the definition of "outbuilding" is the clearest indicator of the ambiguity of the term. Appellants assert it must be presumed the purpose of the amendment was to effect a change, otherwise the amendment would serve no purpose. Appellants submit the change effectuated by the amendment was to clarify the ambiguity as to whether the restrictions in Paragraph no. 7 relate to outbuildings applied to a detached garage.
While the hasty recording of the amendment certainly hints of concern as to the enforceability of the restrictions as originally filed, the amendment can just as easily be characterized as zealous lawyering or a prophylactic act to avoid future litigation over the same issue.[18] If the original restriction was unambiguous, the subsequent amendment did not render it ambiguous. It was merely an attempt, in modern vernacular, to "let me make it perfectly clear."
Our decision can best be summarized by using the following syllogism. Detached structures subordinate to the main residence are "outbuildings." The proposed garage is a detached structure subordinate to the main residence. It, therefore, necessarily follows the proposed garage is an outbuilding. We agree with the trial court, "giving the term outbuilding its common and ordinary meaning . . . a garage can be characterized as an outbuilding" and "a garage clearly fits within this definition."[19]
Appellants' first assignment of error is overruled.
 II
Given our disposition of appellants' first assignment of error, we find it unnecessary to address whether the amended deed restrictions bar construction of the proposed garage. Accordingly, we overrule this assignment of error as moot.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellants.
Hon. William B. Hoffman, P.J. Hon. W. Don Reader, V.J. (Sitting by Supreme Court Assignment) Hon. Lawrence Grey, V.J. (Sitting by Supreme Court Assignment) concur.
[1] Additional facts will be included within our discussion of appellants' first assignment of error.
[2] Appellants cite three Ohio Supreme Court cases in support of this proposition of law: Houk v. Ross (1973), 34 Ohio St.2d 77; Frederick v.Hay (1922), 104 Ohio St. 292; and Hunt v. Held (1914),90 Ohio St. 280.
[3] Appellants claim approval of the plans by the Allotter was not required because Clark-Gibson had been inactive for five years and declared defunct by the Secretary of State in December 1998. If appellants are correct in their construction of Paragraph no. 7, it would appear any property owner in Lagerfeld Properties could build any size, shape or design detached garage they desired and place it anywhere on their property, including their front yard, as long as garage doors do not directly face any street frontage.
[4] Appellants do not claim the restrictions violate public policy.
[5] Dixon v. Van Sweringen Co. (1929), 121 Ohio St. 56; Benner v.Hammond (1966), 109 Ohio App.3d 822.
[6] Id. at 827, citing Arnoff v. Cheese (1920),101 Ohio St. 331.
[7] Appellants' Brief at 6.
[8] Tr. at 121-122. (Emphasis added).
[9] Tr. at 149-150. (Emphasis added).
[10] Appellees' Brief at 13.
[11] Webster's New Twentieth Century Dictionary Unabridged.
[12] Webster's New World Dictionary of American Language.
[13] Random House American College Dictionary, Revised Edition.
[14] Houk, supra, syllabus para. 2.
[15] Kasch v. Joeckle (1929), 30 Ohio App. 404, 409.
[16] Id. at 405. (Emphasis added).
[17] Id. at 408.
[18] We note appellees' trial counsel also notarized the signatures of the various property owners of Lagerfeld Properties who signed the amendment.
[19] February 15, 2001 Judgment Entry at 3, unpaginated.