DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the April 14, 2005 judgment of the Ottawa County Court of Common Pleas, which denied the request of appellant, Lucinda M. Corna, for an injunction to enforce a subdivision height restriction and awarded appellee, Kathleen A. Szabo, damages for the wrongful issuance of a temporary injunction that prevented her from completing the construction of her home. Upon consideration of the assignments of error, we affirm the trial court's decision in part and reverse in part. Appellant asserts the following assignments of error on appeal:
 {¶ 2} "I. The Trial Court erred as a matter of law in denying Appellants [sic] injunctive relief to enforce the protective covenant limiting residential structures to not more than one and one-half stories in height.
 {¶ 3} "II. The Trial Court abused its discretion in finding that enforcement of the height restriction would result in great detriment to Appellee but provide little benefit to Appellants.
 {¶ 4} "III. The Trial Court erred at law in awarding Appellees damages on their First Counter-Claim (sic), and awarding attorney fees and costs in defense of this litigation against the injunction bond in this action."
 {¶ 5} Appellant, Lucinda Corna, and appellee, Kathleen Szabo, are property owners in the Kenykirk Subdivision B of Catawba Island Township. Corna filed a complaint against Szabo and David Woods, a contractor who is performing construction work on Szabo's property, seeking to enjoin them from violating the protective covenants and restrictions of Subdivision B and to prevent them from building a three-story home on Szabo's property. Corna also moved for a temporary restraining order to prevent appellees from proceeding with the construction of the home pending resolution of this case, which was granted by the court on December 29, 2004.
 {¶ 6} Appellees filed a counterclaim against Corna alleging first that she omitted certain facts in her motion for a temporary restraining order that caused it to be wrongfully issued. These facts were that appellees had obtained approval of the construction project from the trustees of the subdivision, the Ottawa County Building Inspection Department, and the Catawba Township Zoning Inspector. Appellees alleged that the granting of the temporary restraining order caused weather damage to the home. Secondly, appellees alleged that the filing of the complaint without adequate investigation caused the intentional infliction of emotional distress upon appellees. Appellees further alleged that appellant's home violated the height restrictions and invaded Szabo's privacy rights because of the numerous windows in the structure.
 {¶ 7} On January 31, 2005, the court issued a modified temporary restraining order to permit appellees to take whatever action was necessary to protect the structure and restore services to the area. However, appellees were not permitted to make any changes to the height of the structure.
 {¶ 8} The case went to trial on January 31 and February 1, 2005. The court issued its judgment entry on April 14, 2005. The court found that appellant was not entitled to an injunction. The court further found in favor of appellees on their first counterclaim for damages resulting from appellant's omission of material facts that resulted in the court wrongfully issuing a temporary restraining order. The court awarded appellees damages, attorney's fees, and costs up to the amount of the security bond of $2,500. Appellees' second claim for intentional infliction of emotional distress was dismissed. Appellant then sought an appeal to this court.
 {¶ 9} The Declaration of Protective Covenants and Restrictions in this case provide, in pertinent part, as follows:
 {¶ 10} "PART B.
 {¶ 11} "1. FULLY-PROTECTED RESIDENTIAL AREA. The residential area covenants in Part C in their entirety shall apply to the entire Kenykirk Subdivision `B,' except Lots 18, 19 and Pond Lot `A."
 {¶ 12} "PART C.
 {¶ 13} "A. LAND USE AND BUILDING TYPE. Said premises shall be used exclusively for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than a detached single-family dwelling of not more than one and one-half stories in height and a private garage for not more than two cars, provided, however, that a dwelling may occupy two or more lots and that accessory buildings may be authorized by written permit from the Committee designated in Part D.
 {¶ 14} "No building shall be erected or located on said premises without prior written approval of the plans therefore by said Committee.
 {¶ 15} "No dwelling shall be located on said premises, the ground area of which is less than 800 square feet for a one story building or 750 square feet for a one and one-half story dwelling exclusive of open porches. If a garage is attached to said dwelling the ground area for either type building shall be not less than 1000 square feet.
 {¶ 16} "* * *.
 {¶ 17} "PART D.
 {¶ 18} "* * *.
 {¶ 19} "2. COMMITTEE. A committee of three members, each of whom shall be an owner or part owner of a lot in said Subdivision B, or in Kenykirk Subdivision A, shall be selected by the owners of the lots in said Subdivision A and B every two years, which shall supervise, levy assessments as provided in Part C, Item 5 above, and enforce these covenants and restrictions. * * *."
 {¶ 20} Appellant's lot was not subject to the height restrictions as it was one of the exempted lots, Pond Lot A. Appellee, Szabo, owns lot number 26, which is subject to the height restrictions. This lot is located directly in front of Lot 23 and partially in front of Lot 22, which are both subject to the height restriction. Pond Lot A is directly behind these two lots. Szabo's remodeled home will have a front roofline that begins at the top of the first floor and includes dormer windows for both the second and third floors. The rear roofline begins at the top of the second story. Only the third floor rooms are located entirely under the roofline and include dormer windows.
 {¶ 21} In her application for a zoning certificate, Szabo indicated that she was seeking to add a "second story and garage" to her home, with the highest point of the building being at 34 feet and 10 inches. In another section of her application, she indicates that the home will have three stories, with 2,300 sq. feet on the first floor, 2,000 sq feet on the second floor, and 600 sq. feet on the third floor.
 {¶ 22} Don Waggoner, the chief building official for the Ottawa County Building Inspection Department and a civil engineer, testified that he has been a building official for the three years and served in this capacity in the 1990s. He issued the building permit for Szabo. The application indicated that the addition would result in a three-story home. He utilized the 1999 Ohio Residential Code for the definition of a story. Because the construction plans conformed to the building code, Waggoner approved the application.
 {¶ 23} Robert Corna, an architect, testified that he was building a house for someone who traded the equity in Pond Lot A for the down payment on a home Corna was building. Before acquiring the lot, Corna investigated the soil conditions and restrictions. He agreed to acquire the lot because he believed that the restriction limited the house heights in front of his lot to a story and a half. Since Pond Lot A was not restricted, Corna could build a house that would enable him to look over the houses in front and still see Lake Erie. He did extensive research into the other lots in the area to determine which ones had height restrictions. He also investigated the homes built in the area and how they impacted his lot. He found that the original character of the area for the last 50 years has been either one story or one and one-half story houses.
 {¶ 24} Lot number 22 was the first to be remodeled and it was converted into a split-level, which he believes still complies with the one and one-half stories requirement. Lot number 27 was remodeled at the time appellant acquired Pond Lot A. Corna did not believe that this was a one and one-half story house because while it looks like a one and one-half story home from the front, there are windows in the back. However, it was the height of appellee's 6,000 square foot house that entirely obliterated Corna's view of the lake and horizon. Corna testified that appellee's house was in a direct line to a view of the sunset from Corna's home. When Corna realized that appellee's house violated the height restrictions, he contacted her directly. Because she would not alter her plans, Corna believed that he was forced to file this action to have the deed restrictions enforced.
 {¶ 25} Corna testified that he had met his neighbor, Bob Hamons, a dozen times since coming to the island. Corna knew that Hamons was a trustee and officer of the Kenykirk Association. Lucinda Corna testified that she had never received notice of annual meetings of the Kenykirk Association. She never received notice of the plans submitted by appellee. From August through December 2004, she and her husband were not on the island because they were in the process of building another house. They did not even know about Szabo's house until December.
 {¶ 26} Patricia Cerny, the Catawba Island zoning inspector, testified that the height restriction on the island is 35 feet. Appellee's house does not violate that height restriction. She viewed the house, after the trusses were in place, and saw that the house looked like it was less than 35 feet. She is unable to measure the house without the help of an engineer. On the zoning application, appellee indicated that the proposed house would have three floors.
 {¶ 27} Matthew Johnson, a residential designer, testified that he designed the remodeling of Szabo's home. He had previously designed the remodeling of the home of Szabo's neighbor, Lot 27. Johnson reviewed the restrictions of the subdivision and the zoning regulations and complied with them in developing his design. In his opinion, the remodeled design results in a one and one-half story house because there are no two-story walls. Johnson testified that Szabo's house was constructed in accordance with his plans. The third floor has eight foot walls and a ceiling that vaults up to approximately nine feet. While the home has three stories in it, he believes that it is not a three-story home. Johnson did not consider the Catawba Island Township zoning resolution that defines a story. Johnson admitted that this house does not meet this definition. He also testified that the house on Lot 27, which he also designed, is not as tall as Szabo's house.
 {¶ 28} Robert Hamons, currently the Vice President of the Kenykirk Subdivision Association, testified that he has been on the board for ten out of the last twelve years he has lived in the subdivision. In his opinion, appellant's property is not part of the subdivision association because she did not pay the association dues. Hamons agreed that the purpose of the height restriction is to preserve the view for everyone. He recalled getting the plans and going with the association president to see Szabo. After discussing the plans with her, the two men discussed the plans alone. They then went next door to a trustee's meeting to get approval from all of the subdivision lot owners. Hamons approved of appellee's remodeling plans because he believed that this was a one and one-half story home. He has not heard any complaints from the other residents.
 {¶ 29} Szabo testified that she gave the association rules to Johnson to ensure that the redesign of her house would comply with any regulations. She had chosen the high pitch roof to prevent roof leaks that she had experienced with the flat roof on her original home. Once the plan was drawn, she had it approved by the township and the county building inspector. She also sought approval from the subdivision association. Because of the temporary restraining order, her house was not finished. She had open windows that let in snow and the roof was collapsing from the weight of the shingles on the roof. However, she admitted that the builder had not completed these items on December 22, 2004, which was just prior to the restraining order.
 {¶ 30} Szabo also testified that the closest the sun sets in her direction is almost directly in front of the channel and not her house. Other times of the year, the sun sets further away from her house and closer to Port Clinton.
 {¶ 31} The trial court found that the purpose of the height restriction was to protect and preserve the view of Lake Erie for the benefit of all of the lots owners in the subdivision. The court found that Corna had standing to enforce the restrictions imposed on the other lot owners in Subdivision B. The court found that the overwhelming majority of homes in the entire Kenykirk Subdivision could be classified as one and one-half-story houses. While most of the houses in Subdivision B are less than two stories, a number of homes are either two- or three-story structures depending upon the method of classification. The court reviewed the conflicting evidence on the issue of whether Szabo's home was a three-story structure or a one and one-half story structure and concluded that Szabo's home was a one and one-half-story house because of its roofline. The court then went on to address the issue of waiver or abandonment.
 {¶ 32} The court, considering only Subdivision B, found that because the association approved of the other two homes along the waterfront which are two stories in height, it had waived or abandoned the restrictive covenant regarding height. The court found that the great hardship Szabo would face from removing the top two stories of her house outweighed the minimal benefit appellant gained from having a view of the lake. However, the court went on to state that it based its decision entirely on the ambiguity of the "one and one-half story in height" restriction.
 {¶ 33} The court found that the height restriction of "one and one-half stories in height" was ambiguous because it was not specific enough. It could mean either that Szabo's house violates the restriction because it has three stories and is, therefore, greater in height than one and one-half stories or that Szabo's house did not violate the restriction because it could be classified as a one and one-half-story structure because one of the rooflines began at the first floor. Interpreting the phrase in the least restrictive manner, the court found that the restriction permits a one and one-half-story house like Szabo's with a roofline that begins at the top of the first floor on at least one side of the house. Therefore, the court found that Szabo's house did not violate the restriction.
 {¶ 34} The trial court denied appellant injunctive relief and granted appellees' first counterclaim of wrongfully issuing the temporary injunction. The court awarded appellees attorney fees and cost of the defense of this litigation up to the amount of the bond, $2,500. Appellant has sought an appeal from this decision.
 {¶ 35} Appellant argues first that the standard of review in this case is de novo because she is asserting that the trial court erred by misconstruing the law and misapplying the law to the facts of this case. We agree that the standard of review on the issues of law are reviewed de novo. But, the issuance of an injunction is a matter of judicial discretion. Therefore, we must affirm the trial court's denial of the injunctive relief unless we find that the trial court abused its discretion by denying the injunction. Perkins v. Village of Quaker City (1956),165 Ohio St. 120, 125.
 {¶ 36} In her first assignment of error, Corna argues that the trial court erred as a matter of law by finding that the language of the restriction was ambiguous.
 {¶ 37} The construction of deed restrictions is a question of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. Thus, the trial court's construction is reviewed by the appellate court de novo. Grahamv. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313.
 {¶ 38} When construing the language of a deed restriction, as with any written instrument, the goal of the court is to carry out the intention of the parties, which is determined from the language used in the deed. Hitz v. Flower (1922),104 Ohio St. 47, 57, and Larwill v. Farrelly (1918), 8 Ohio App. 356. If the language of a deed restriction is unambiguous, the court must enforce the restriction as written. Cleveland Baptist Assn. v.Scovil (1923), 107 Ohio St. 67, 71-72, and Dean v. Nugent CanalYacht Club, Inc. (1990), 66 Ohio App.3d 471, 475. The court applies the common and ordinary meaning of the language of the restriction. Devendorf v. Akbar Petroleum Corp. (1989),62 Ohio App.3d 842, 845, and Harbor Island Assn., Inc. v. Kaiser
(1994), 6th Dist. App. No. O-39-022, at 3.
 {¶ 39} However, if the deed restriction is "* * * indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." Houk v. Ross (1973), 34 Ohio St.2d 77, paragraph two of the syllabus, implicitly overruled on other grounds byMarshall v. Aaron (1984), 15 Ohio St.3d 48; Loblaw v. WarrenPlaza, Inc. (1955), 163 Ohio St. 581, 592; and Hitz v. Flower,
supra at paragraph one of the syllabus.
 {¶ 40} We find that the trial court erred in finding that the term "one and one-half stories in height" is ambiguous because it could either mean literally a house less than the height of one and one-half stories or a one and one-half story structure like Szabo's home. Appellant's husband testified that a one and one-half-story structure did not exist at the time that this restriction was written. Furthermore, the addition of the phrase "in height" clearly indicates that the height of the structure was the determinative fact, not the type of roofline utilized. Therefore, the only possible meaning the phrase could have had at that time is that structures greater in height than one and one-half stories were prohibited. The fact that the association later interpreted this phrase more broadly and permitted the construction of a bi-level home and a "one and one-half story" structure where the roofline ends at the top of the first floor is irrelevant with regard to the issue of whether the term was ambiguous.
 {¶ 41} The only ambiguity in the restriction is that the language does not give an exact height that constitutes a story. However, any ambiguity in this regard does not make the entire restriction unenforceable. It merely requires the court to consider evidence as to what was the standard or maximum height of a story. Based on that evidence, the court must construe the restriction in the least restrictive manner and prohibit only construction that exceeds the greatest height possible for one and one-half stories. In this case, witnesses testified that the height of a story varied between seven and nine feet and that a one and one-half story home is no higher than 15 feet. There is no question that appellee's 34 1/2-foot house would not fall within the range of the height of one and one-half stories. Therefore, we find appellant's first assignment of error well-taken.
 {¶ 42} In her second assignment of error, appellant argues that the trial court abused its discretion by finding that the benefit of the height restriction to appellant was outweighed by the detriment it would cause to appellee. This assignment of error concerns the issue of wavier.
 {¶ 43} Restrictive covenants may become unenforceable when there is a waiver or abandonment of the restrictions because the nature of the neighborhood or community has so changed that the restriction no longer has substantial value. Houk v. Ross
(1973), supra at 91-92 and Romig v. Modest (1956),102 Ohio App. 225, 229-230. Even minimal violations of a restriction will bar enforcement of the restriction if the violations detrimentally affect the essence of the restriction. Paternitiv. Zuber (Nov. 20, 1997), 8th Dist. App. No. 71817, at 3, citingPettey v. First National Bank of Geneva (1992),225 Ill.App.3d 539, 167 Ill.Dec. 771, and Guarantee Title Trust Co. v.Offenbacher (1927), 6 Ohio Law Abs. 246. Furthermore, the burden of proof is on the party alleging waiver of the restriction.Romig v. Modest (1956), 102 Ohio App. 225, 230. Therefore, the burden of proof was on appellee to establish the defense of wavier.
 {¶ 44} What constitutes a change in the neighborhood depends upon the facts in each case. Landen Farm Community ServicesAssn., Inc. v. Schube (1992), 78 Ohio App.3d 231, 235-236 (a wavier of a restriction against basketball hoops existed when 50 out of the 2,000 homeowners in the neighborhood put up basketball hoops); Romig v. Modest, supra (property owners had not waived their right to have a restrictive covenant prohibiting fences because the restriction still retained substantial value to plaintiffs and other lot owners whose property was abutting or in close proximity to the defendants because the type of fence he installed substantially altered the character of the neighborhood and impaired the enjoyment of surrounding property) and Santorav. Schalabba, 8th Dist. App. No. 80291, 2002-Ohio-2756, at ¶ 11 (nature of the neighborhood had changed so that the restriction had become valueless when 20 percent of the subdivision had erected fences similar to the defendant's without prior approval). The key facts to consider in this determination are whether enforcement of the restriction would restore the neighborhood to its originally intended character and whether enforcement would impose great hardship on the defendant with minimal benefit to the plaintiff. Nutis v. SchottensteinTrustees (1987), 41 Ohio App.3d 63, 67.
 {¶ 45} The trial court found that the height restriction in this case was no longer enforceable because the association had approved the building of "one and one-half story" houses in Subdivision B, described as houses with a roofline that begins at the top of the first story. Approval of the association, however, does not constitute waiver by appellant. The lot owners voluntarily created this association. Appellant was not a member of the association. Therefore, while the association's actions may constitute waiver of its rights to enforce the restriction, such actions do not affect the rights of appellant.
 {¶ 46} Furthermore, we find that the trial court fundamentally erred by accepting Corna's testimony that the purpose of the height restriction was to benefit the view of the lake for Pond Lot A and Lots 18 and 19. The deed does not explicitly state a purpose for the height restriction. However, it does explain that all of the restrictions in the deed are for the benefit of all of the lot owners. The height restriction is included within the section regarding land use and building types. That section also prohibits structures other than single-family residences and private garages for not more than two cars.
 {¶ 47} Corna testified, as an architect, that he determined from the layout of the subdivision and the restrictions that the sole purpose of the height restriction was to benefit the three unrestricted lots so that they would retain a view of the lake even though they were located at the back of the subdivision. His testimony fails to address, however, the fact that lots 15, 16, 17, and 20 were also located at the back of the subdivision and yet were subject to the height restriction. We also note that lots 18 and 19 differ from all of the other lots in that they are located at the back of the subdivision and appear to be larger lots than the other lots in the subdivision. Because of its label, we assume that Pond Lot A was not contemplated as being a home lot.
 {¶ 48} While appellant presented evidence of the purpose of the restriction, we find that she has failed to convince this court that appellant's view of the lake was the primary purpose of the height restriction. We find from the language of the declarations that the purpose of this restriction was to maintain the aesthetic character of the subdivision and limit the subdivision to single-family homes, not to protect appellant's view of the lake.
 {¶ 49} As to the issue of waiver, we find that appellant's own actions resulted in waiver of her right to enforce the restriction. When appellant acquired her property, Szabo's neighbor (Lot 27) was renovating his house and converting his home to a "one and one-half story" structure that had a roofline extending all the way to the first floor on two sides of the house. Szabo's other neighbor (Lot 25), had also built a "one and one-half story" home where the roofline began at the top of the first floor in the front of the house and had a full second floor at the back of the house. This house was renovated prior to appellant's purchase of her property. Another subdivision owner (Lot 22) had already constructed a bi-level house. Therefore, at the time appellant acquired her property, she was already on notice that three of the twelve subdivision owners subject to the restriction had constructed homes that violated the restriction. Therefore, we find that the nature of the subdivision had been altered sufficiently to eliminate the value of the restriction, which was aesthetics and single-family housing, not appellant's view of the lake. Appellant's second assignment of error is not well-taken.
 {¶ 50} In her third assignment of error, appellant argues that the trial court erred as a matter of law in awarding appellees damages because the temporary injunction had been wrongfully issued and attorney's fees and costs in defense of this litigation. The basis for the court's finding that the injunction was wrongfully issued was that appellant failed to notify the court that the association had approved of appellee's house renovations.
 {¶ 51} As we have already discussed, the approval of the plans by the association did not affect appellant's rights to seek enforcement of the height restriction. Therefore, this fact was not relevant to the issuance of the injunction. As a result, this fact cannot form the basis for awarding damages and attorney's fees and costs to appellee. Appellant's third assignment of error is found well-taken.
 {¶ 52} Having found that the trial court did commit error prejudicial to appellant in part and that substantial justice has not been done, the judgment of the Ottawa County Court of Common Pleas is affirmed in part and reversed in part. The judgment is affirmed only as to the finding that appellant was not entitled to an injunction because appellant had waived her right to seek enforcement of the subdivision height restrictions. In all other respects, the judgment is reversed. Appellant and appellees are ordered to equally pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
Handwork, J., Skow, J. Parish, J., concur.