FARRELL et al., Appellees,

v.

DEUBLE et al., Appellants.

[Cite as *Farrell v. Deuble,* 175 Ohio App.3d 646, 2008-Ohio-1124.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 07CA0028.

Decided March 17, 2008.

Andrew P. Lycans, for appellees.

James M. McHugh; and Jason M. Stork, for appellants.

---

CARR, Presiding Judge.

{¶ 1} Appellants, Best Housing, Inc., and Paul W. and Amy B. Deuble, appeal the decision of the Wayne County Court of Common Pleas, which granted the motion of appellees, David and Roberta Farrells, for injunctive relief. This court reverses.

## I

{¶ 2} On October 30, 2003, Harry H. Varner and Hattie L. McCorkle, trustees of the Jessie M. Varner Trust ("the trust"), caused four tracts of property owned

by the trust to be subject to certain restrictive covenants. In July 2006, the Deubles purchased one of the lots with the intent of erecting and operating a bed-and-breakfast on the property. At the time, however, the restrictive covenants imposed by the trust included a provision that the property could be used only for single-family residential purposes. The Deubles consulted with the attorney for the trust, and an amendment was added to the deed restrictions allowing them to operate a bed-and-breakfast on the property.

{¶ 3} The Deubles then entered into a contract with Best Housing, Inc., for the purchase, construction, and delivery of an industrialized unit upon their property. The unit was to be their personal residence. The Deubles then secured a building permit from the Wayne County Building Department allowing them to construct and place an industrialized unit on their property. Best Housing then began construction and placement of the industrialized unit on the Deubles' property.

{¶ 4} After the foundation was laid, the Farrells noticed sections of the Deubles' home being delivered and placed on the foundation. At that point, Paul received a telephone call from Hattie L. McCorkle, the trustee of the trust. McCorkle advised Paul Deuble that the structure he was placing on his property was in violation of the restrictive covenants contained in his deed. The telephone call was followed by a cease-and-desist letter dated November 16, 2006, sent on behalf of McCorkle, the trust, and the Farrells.

{¶ 5} David and Roberta Farrell initiated the underlying action by filing a verified complaint and motion for a temporary restraining order on November 21, 2006. The complaint alleged that Paul and Amy Deuble were constructing a "manufactured home" upon their property in violation of a deed restriction. The Farrells also filed a motion for a temporary restraining order. The trial court granted the temporary restraining order and set bond. The Farrells filed a motion for a preliminary injunction.

{¶ 6} The hearing on the motion for a preliminary injunction was held on December 12, 2006. At the hearing, the trial court allowed Best Housing to intervene based on its contention that it would bear the full risk of loss for the "modular home" purchased by the Deubles. The trial court issued a preliminary injunction on December 19, 2006.

{¶ 7} The trial court held a permanent injunction hearing on January 26 and March 6, 2007. On March 30, 2007, the trial court granted the Farrells' motion for a permanent injunction.

{¶ 8} The Deubles timely appealed the trial court's granting of the permanent injunction, setting forth two assignments of error for review. The assignments of error have been combined to facilitate our review.

II

## ASSIGNMENT OF ERROR I

The trial court erred as a matter of law by failing to apply the correct legal definition to the term "manufactured home" as it appears in the deed restriction.

## ASSIGNMENT OF ERROR II

The trial court erred as a matter of law by failing to interpret the ambiguous deed restriction in favor of the free use of land.

{¶ 9} In their first assignment of error, the Deubles contend that the trial court erred by not using the definition found in the Ohio Revised Code when interpreting the deed restriction at issue. In their second assignment of error, the Deubles argue that the trial court erred in not interpreting the deed restriction in favor of the free use of land.

{¶ 10} "The construction of written instruments, including deeds is a matter of law. Questions of law are determined de novo." (Citations omitted.) *Karam v. High Hampton Dev., Inc.*, 9th Dist. Nos. 21265 and 21269, 2003-Ohio-3310, 2003 WL 21459235, ¶ 20.

{¶ 11} The rules of construction applicable to restrictive covenants are well established. Generally, restrictions on the free use of land are disfavored. *Driscoll v. Austintown Assoc.* (1975), 42 Ohio St.2d 263, 276–277, 71 O.O.2d 247, 328 N.E.2d 395. If the covenant's language is indefinite, doubtful, and capable of contradictory interpretations, the court must construe the covenant in favor of the free use of land. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 63 O.O.2d 119, 296 N.E.2d 266, paragraph two of the syllabus. When the language in a restriction is clear, a court must enforce the restriction. *Dean v. Nugent Canal Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554. Accordingly, when interpreting a restrictive covenant, common, undefined words appearing in the written instrument "will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

{¶ 12} Section 11 of the restrictive covenants at issue provides: "No Mobile Home or House Trailer or other Manufactured Home shall be located, constructed, or assembled upon the Property at any time."

{¶ 13} The trial court found that the structure purchased by the Deubles and partially assembled on their property was a manufactured home. Therefore, the

court concluded that the structure violated Section 11 and granted the Farrells' motion for a permanent injunction, preventing the Deubles from assembling or constructing a manufactured home on their property. In reaching its decision, the trial court found that the term "manufactured home" was a common word and should be given its ordinary meaning. In reaching its conclusion, the trial court cited this court's decision in *Ellis v. Patonai,* 9th Dist. No. 06CA0012, 2006-Ohio-5054, 2006 WL 2788562.

{¶ 14} In *Ellis,* a homeowner was operating an alpaca farm on land that contained a restrictive covenant prohibiting having more than two animals on the property. This court rejected the homeowner's argument that we should define the word "animal" as it appears in the federal Animal Welfare Act, Section 2131 et seq., Title 7, U.S.Code. Instead, this court found that the Act had no relevance to the case and that there was no evidence indicating that the parties intended the word "animal" to mean anything other than the plain and ordinary meaning of the word. Therefore, this court affirmed the trial court's entry granting the injunction.

{¶ 15} The trial court also quoted the definition of "manufactured home" found in the Random House Unabridged Dictionary (2nd Ed.1993): "1. a prefabricated house assembled in modular sections. 2. See mobile home."

{¶ 16} Having found that the structure that the Deubles were assembling on their property was a "manufactured home," the trial court granted the Farrells' motion for injunctive relief.

{¶ 17} The Deubles argue that the trial court erred by not using the definition of "manufactured home" found in the Ohio Revised Code. To support their argument, the Deubles point to the fact that certain words in the covenant are capitalized. The Deubles contend that the capitalization of certain words in the covenant indicates that the parties who constructed the covenant intended that those words be interpreted using the definitions found in the Revised Code. The Deubles also argue that the term "manufactured home" is vague and ambiguous; therefore the trial court erred in not construing the restrictive covenant in favor of the free use of land.

{¶ 18} R.C. 3781.06(C)(4) defines a "manufactured home" as:

[A] building unit or assembly of closed construction that is fabricated in an off-site facility and constructed in conformance with the federal construction and safety standards established by the secretary of housing and urban development pursuant to the "Manufactured Housing Construction and Safety Standards Act of 1974," 88 Stat. 700, 42 U.S.C.A. 5401, 5403, and that has a permanent label or tag affixed to it, as specified in 42 U.S.C.A. 5415, certifying compliance with all applicable federal construction and safety standards.

{¶ 19} The Farrells argue that the trial court correctly found that "manufactured home" was a common term and should be given its ordinary meaning. In support of their argument, the Farrells cite this court's decision in *Ellis*.

{¶ 20} This court finds that the facts in *Ellis* are distinguishable from the instant matter. Unlike the word "animal," the term "manufactured home" is not an ordinary word. As the record reflects, the dictionary definition of a "manufactured home" and the definition found in the Revised Code are not mirror images of one another. The testimony also indicates that there is no universal definition of "manufactured home" in the construction industry. Given that the term "manufactured home" is susceptible to more than one meaning and that the covenant did not define the term, this court finds that the term is capable of contradictory interpretations. Therefore, the trial court should have interpreted the deed restriction in favor of the free use of land. See *Houk*, 34 Ohio St.2d 77, 63 O.O.2d 119, 296 N.E.2d 266, at paragraph two of the syllabus.

{¶ 21} The fact that the drafters of Section 11 of the restrictive covenants at issue chose to capitalize the term "manufactured home" is further indicia that they did not intend that it be given an ordinary meaning. This court has held:

[T]he actual placement or typography of the words in the printed contract, as well as the structure and punctuation used in drafting the contract, must be considered along with the words themselves. *Reeder v. Cetnarowski* (1988), 47 Ohio App.3d 90, 92 [547 N.E.2d 376]. If the wording, typography, and punctuation selected by the [drafter] make a contract provision ambiguous, that provision must be construed strictly against the [drafter] and liberally in favor of the [non-drafting party]. Id.

*Mandat v. Reinecker's Bakery* (Dec. 15, 1993), 9th Dist. No. 16241, 1993 WL 526653.

{¶ 22} This court finds that the word "manufactured home" as used in Section 11 of the restrictive covenant at issue in the present matter is "indefinite, doubtful and capable of contradictory interpretation[s]." See *Houk*, 34 Ohio St.2d 77, 63 O.O.2d 119, 296 N.E.2d 266, at paragraph two of the syllabus. Consequently, this court finds that the trial court erred in not construing the covenant in favor of the free use of land. Id. Mr. and Mrs. Deubles' first and second assignments of error are sustained.

### III

{¶ 23} The Deubles' assignments of error are sustained. The decision of the Wayne County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

DICKINSON, J., concurs.

WHITMORE, J., dissents.

WHITMORE, Judge, dissenting.

{¶ 24} I disagree with the majority's conclusion that the covenant at issue is ambiguous. Accordingly, I respectfully dissent.

{¶ 25} Contrary to the majority's conclusion, there is nothing in the parties' covenant to suggest that they intended to use the statutory definition of "manufactured home." In its entirety, the provision at issue reads as follows:

No Mobile Home or House Trailer or other Manufactured Home shall be located, constructed, or assembled upon the Property at any time.

{¶ 26} Of the three capitalized terms, only "manufactured home" is defined by R.C. 3781.06. "Mobile home" is defined in R.C. 4501.01(O). Furthermore, while the term "trailer" is defined by statute, the term "house trailer" is not defined in any section of the Revised Code. Appellants concede this point, referring to the fact that "house trailer" has not been defined in the Revised Code for more than 20 years. Consequently, the majority's position that the parties capitalized words in order to refer to the Revised Code is untenable.

{¶ 27} Additionally, I believe the majority's interpretation removes the term "manufactured home" from its context. The covenant restricts the building of a "Mobile Home *or* House Trailer *or other* Manufactured Home." (Emphasis added.) It is clear from this language that the parties intended that the term "manufactured home" be given a broad meaning by the inclusion of the word "other" immediately before it. The parties began by naming specific types of manufactured homes. In fact, one court has held that the term "house trailer" is contained within the broader term "manufactured home." See *LuMac Dev. Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 566, 573 N.E.2d 681. Similarly, the dictionary definition of "manufactured home" includes a reference to "mobile home." After referring to these two subsets of manufactured homes, the parties ended the provision by prohibited any "other" manufactured home. The majority ignores this language used by the parties in reaching its conclusion.

{¶ 28} I also cannot agree that the term "manufactured home" is ambiguous. As noted above, logic dispels any argument that the parties' capitalization refers to the Revised Code. Consequently, there is nothing to support a conclusion that the Revised Code definition should apply. Furthermore, applying the common, ordinary definition of "manufactured home" does not lead to a manifestly absurd result. In its entry, the trial court relied upon the dictionary definition of the term to conclude that an injunction was warranted. I would find no error in this determination. Consequently, I dissent.