[Cite as *D & L Ferguson LLC vs. Thompson*, 2018-Ohio-2473.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| D & L FERGUSON LLC | JUDGES:<br>Hon. John W. Wise, P. J.<br>Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| -vs- | |
| MICHAEL THOMPSON, As Trustee of the MICHAEL W. THOMPSON LIVING TRUST, et al. | Case No. 2017 CA 00194 |
| Defendants-Appellants | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common
                              Pleas, Case No.  2017 CV 00563

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       June 25, 2018

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant Montrose

LISA K. FERGUSON                      JOSEPH T. DATTILO
110 Main Street                       600 Superior East, Suite 1600
Wintersville, Ohio  43953             Cleveland, Ohio  44114

                                      For Defendant-Appellant Thompson

                                      CLAIR E. DICKINSON
                                      IRVING B. SUGERMAN
                                      CHRISTOPHER T. TEODOSIO
                                      BROUSE MCDOWELL LPA
                                      388 South Main Street, Suite 500
                                      Akron, Ohio  44311

*Wise, P. J.*

{¶1}    Defendants-Appellants Michael Thompson, as Trustee of the Michael W. Thompson Living Trust, and Stars of Cleveland, Inc., dba Montrose Ford Lincoln, appeal the September 25, 2017 judgment entry of the Stark County Court of Common Pleas, which found enforceable a deed restriction affecting a parcel of commercial property in Alliance, Ohio, owned by Appellant Thompson. Plaintiff-Appellee is D & L Ferguson LLC, the owner of an adjoining mall property. The relevant facts leading to this appeal are as follows.

{¶2}    The focus of the present dispute is a 1.0-acre parcel of real property, owned by the Michael W. Thompson Living Trust, located at 2490 West State Street (also known as Route 62) in Alliance, Ohio. This parcel (hereinafter the "Thompson" property) fronts a busy commercial strip leading to Mount Union University and downtown Alliance. Said parcel also adjoins a larger parcel at 2500 West State Street, better known as the Carnation Mall, an indoor retail facility, and the parking lot for the mall. The mall itself sits back somewhat from West State, with a McDonald's restaurant, a Tractor Supply store, and a Kay Jewelers store sharing the street frontage alongside the Thompson property.

### *Historical Background - 2500 West State Street*

{¶3}    Prior to 1981, Midland Service Corporation ("Midland") owned both the Thompson property (2490 West State) and the larger "mall" property upon which Carnation Mall now stands (2500 West State).[1] In April 1983, R.G. Sproul and Associates, in the name of the Alliance Mall Company, exercised an option to purchase

---

[1]    The record indicates Midland Service Corporation was at that time an affiliate of Midland Buckeye Federal Savings and Loan Bank. *See* Tr. at 194.

some of the properties in the present area of the mall. Midland maintained a repurchase option concerning what is now the Thompson property, as further detailed *infra*.

{¶4} On December 26, 1990, the Alliance Mall Company conveyed the mall property, 2500 West State Street, to AllOhio Holding, Inc.

{¶5} On February 28, 2001, AllOhio Holding, Inc. conveyed 2500 West State Street to Carnation Mall, LLC.

{¶6} On April 17, 2008, Carnation Mall, LLC conveyed 2500 West State Street to Appellee D & L Ferguson, LLC by quit claim deed. It is thus undisputed that as to the present property issues, Appellee D & L Ferguson is the successor of the Alliance Mall Company.

*Historical Background - 2490 West State Street*

{¶7} In the meantime, in September 1983, the Alliance Mall Company conveyed 2490 West State Street back to Midland Service Corporation by general warranty deed. The deed contains the following restrictive covenant:

> In accepting this conveyance and as part of the consideration therefor, the Grantee, its successors and assigns, covenants with the Grantor [the Alliance Mall Company], its successors and assigns, that it will not use the above described premises for any purpose other than a saving and loan branch office and that said branch office structure shall not exceed 750 square feet. This covenant shall run with the land herein conveyed and shall be binding on the Grantee, its successors and assigns, unless this covenant is subsequently modified in writing by the Grantor, its successors and assigns.

{¶8}  Thus, the deed restriction purports to prohibit use of property at 2490 West State Street, for anything other than as a branch office of a savings and loan institution.

{¶9}  As indicated previously, the property at 2490 West State abuts the parking lot for Carnation Mall. There is presently a one-story building, styled as a bank branch facility, approximately 750 square feet in size on the property.

{¶10} At some point after the above September 1983 conveyance, Midland Service Corporation conveyed the Thompson property to Midland Buckeye Federal Savings and Loan Bank, which later became Sky Bank. Although the exact time frames have faded, these entities used the Thompson property as a savings and loan branch. Sky Bank was thereafter purchased by Huntington National Bank.

{¶11} In June 2000, Huntington National Bank leased the property to the Alliance Area Development Foundation, a non-profit organization that promotes the economic development of Alliance. Said foundation is not a savings and loan institution. It appears undisputed that there was never a written modification to the aforementioned restrictive covenant to allow the foundation to operate at the property.

{¶12} In November 2013, Appellant Thompson, as trustee, purchased the Thompson property from Huntington National Bank.

*Prior Litigation*

{¶13} On August 11, 2014, Stars of Cleveland, Inc., seeking to utilize the Thompson property for a retail truck lot, filed a complaint in the Stark County Court of Common Pleas for tortious interference of business relationships, slander of title, and injunctive relief. The trial court subsequently dismissed some of the claims for tortious interference with business relationships and the claim for slander of title.

{¶14} On March 30, 2015, Stars of Cleveland filed a first amended complaint to add a claim for declaratory judgment. Stars of Cleveland included in this claim a request for the trial court to determine the enforceability of the restrictive covenant, *i.e.*, a declaration that the restrictive covenant did not prevent it from operating a car dealership on the property because D & L had waived the restrictive covenant.

{¶15} Stars of Cleveland and D & L thereafter filed motions for summary judgment on the claim for declaratory judgment. Stars of Cleveland dismissed without prejudice its claim for tortious interference with a business relationship.

{¶16} On September 30, 2015, the trial court issued its decision granting summary judgment in favor of D & L, essentially determining that the restrictive covenant was enforceable against Stars of Cleveland.

{¶17} Stars of Cleveland then appealed. *See Stars of Cleveland, Inc. v. D & L Ferguson, L.L.C.*, 5th Dist. Stark No. 2015CA00190, 2016-Ohio-4625. On June 13, 2016, in a 2 – 1 decision, this Court reversed the grant of summary judgment and remanded the matter to the trial court for further proceedings. *Id.* at ¶ 46.

{¶18} However, Stars of Cleveland and Thompson (plaintiffs in that instance) thereafter voluntarily dismissed their action.

<u>Present Appeal</u>

{¶19} On March 15, 2017, Appellee D & L Ferguson LLC, dba Carnation City Mall, filed a civil complaint in the Stark County Court of Common Pleas against Michael Thompson, as Trustee of the Michael W. Thompson Living Trust, and Stars of Cleveland Inc., dba Montrose Ford Lincoln. The complaint included claims of breach of contract, unjust enrichment, slander of title, trespass, tortious interference with business

relationships, and tortious interference with contract. Appellee therein sought monetary damages and injunctive relief

{¶20} On March 30, 2017, appellee filed an amended complaint, adding a claim seeking enforcement of the 1983 deed restriction.

{¶21} The matter proceeded to a bench trial on June 26, 2017, with the trial court combining a hearing on the preliminary injunction with the trial on the merits. Prior to commencement, appellee dismissed all of its claims except enforcement of the deed restriction and its request for injunctive relief regarding use of the Thompson property.

{¶22} Via a twelve-page judgment entry issued on September 25, 2017, the court granted judgment on the first amended complaint in favor of appellee and against appellants. Specifically, the court concluded that "*** the deed restriction at issue is enforceable against [appellants] and [appellants] are, hereby, enjoined from using the [Thompson] property in any manner inconsistent therewith." Judgment Entry at 12.

{¶23} On October 12, 2017, appellants filed a notice of appeal. They herein raise the following seven Assignments of Error:

{¶24} "I. THE TRIAL COURT INCORRECTLY REWROTE THE RESTRICTIVE COVENANT BY DETERMINING THAT THE PHRASE 'SAVINGS AND LOAN BRANCH OFFICE' AS USED IN IT MEANS 'ANY BANKING INSTITUTION BRANCH OFFICE.'

{¶25} "II. TO THE EXTENT THE TRIAL COURT HELD THAT THE DEED RESTRICTION IS VALID AND ENFORCEABLE DESPITE NOT BEING PART OF A 'BUILDING PLAN OR SCHEME,' IT ERRED AS A MATTER OF LAW.

{¶26} "III. TO THE EXTENT THE TRIAL COURT FOUND THAT THE DEED RESTRICTION WAS PART OF A GENERAL LAND USE PLAN OR SCHEME, THAT

FINDING IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND MUST BE REVERSED.

**{¶27}** "IV. THE TRIAL COURT'S DETERMINATION THAT THE ALLIANCE FOUNDATION'S USE OF THE THOMPSON PROPERTY WAS CONSISTENT WITH THE RESTRICTIVE COVENANT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND MUST BE REVERSED.

**{¶28}** "V. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO CONCLUDE THAT THE DEED RESTRICTION IS OUTMODED BECAUSE OF THE CHANGE IN THE SAVINGS AND LOAN BUSINESS AND, THEREFORE, IS UNENFORCEABLE.

**{¶29}** "VI. THE TRIAL COURT'S ENFORCEMENT OF THE DEED RESTRICTION PROVIDES D & L UNFETTERED DISCRETION OVER HOW THE TRUST MAY USE THE THOMPSON PROPERTY AND, ACCORDINGLY, IS INCORRECT AS A MATTER OF LAW.

**{¶30}** "VII. THE INJUNCTION ENTERED BY THE TRIAL COURT IS INVALID BECAUSE IT DOES NOT DESCRIBE IN REASONABLE DETAIL THE ACT OR ACTS TO BE RESTRAINED."

## *Law of the Case*

**{¶31}** As an initial matter, we must consider the effect of our previous decision on our present analysis. The law of the case doctrine provides a decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *U.S. Bank v. Detweiler,* 5th Dist. Stark No. 2011CA00095, 2012–Ohio–73, ¶ 26, citing *Nolan v. Nolan*

(1984), 11 Ohio St.3d 1, 462 N.E.2d 410. However, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case.*" *GMAC Mtge., LLC v. McKeever*, 651 Fed.Appx. 332, 339 (6th Cir.2016), citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (emphasis added). In this instance, our previous ruling remanded the matter to the trial court to consider substantial value and waiver. Therefore, we find reliance on the law of the case doctrine of little utility in this appeal.

I.

**{¶32}** In their First Assignment of Error, appellants contend the trial court committed reversible error in interpreting the phrase 'savings and loan branch office' as used in the deed restriction as meaning any banking institution branch office. We disagree.

**{¶33}** Ohio law does not favor restrictions on the use of property. *Polaris Owners Assn., Inc. v. Solomon Oil Co.,* 5th Dist. Delaware No. 14CAE110075, 50 N.E.3d 983, 2015–Ohio–4948, ¶ 51, quoting *Driscoll v. Austintown Assoc.,* 42 Ohio St.2d 263, 276, 328 N.E.2d 395 (1975). Restrictions are not to be extended or created by conjecture or implication, nor are restrictions to be inferred from doubtful language. *Ritzenthaler v. Pepas*, 107 Ohio App. 385, 389, 159 N.E.2d 472, 475 (6th Dist.1958).

**{¶34}** Construction of a deed restriction is a matter of law and, as such, is reviewed by an appellate court under a *de novo* standard of review. *Corna v. Szabo,* 6th Dist. No. OT-05-025, 2006-Ohio-2764, ¶ 37. In construing the language of a deed restriction, a court's goal is to ascertain the intention of the parties as reflected by the language used in the restriction. *Stoneridge Farms Association v. Fuller*, 6th Dist. Lucas

No. L-06-1103, 2007-Ohio-1191, ¶8, citing *Hitz v. Flower* (1922), 104 Ohio St. 47, 57; *Brooks v. Orshoski* (1998), 129 Ohio App.3d 386, 390. The court must interpret the language of the restriction by giving it its common and ordinary meaning. *Orshoski, supra*, at 390-391.

**{¶35}** The judgment entry under appeal includes the following determination: "The Court finds that absurdity would result in reading the restriction as only applicable to 'Savings and Loan' branch offices as opposed to any other banking institution given that the only difference between a 'Savings and Loan' and any other bank is the nature of governmental regulation and that 'Savings and Loan,' accordingly *[sic]* to Stephen Hiler [*sic*], a witness presented by the defendants, is a 'term of art.' "

**{¶36}** Judgment Entry at 10.

**{¶37}** Appellants essentially posit that the trial court improperly expanded, even "rewrote," the savings and loan language to mean any type of banking institution as a means of "saving" the deed restriction, even though standard commercial banking would have been prohibited on the property at the time the deed was drafted. However, we have frequently recognized that an appellant, in order to secure reversal of a judgment, must generally show that a recited error was prejudicial to him or her. *See Tate v. Tate,* 5th Dist. Richland No. 02–CA–86, 2004–Ohio–22, ¶ 15, citing *Ames v. All American Truck & Trailer Service,* 6th Dist. Lucas No. L–89–295, 1991 WL 16509.

**{¶38}** We note that where the language of a deed restriction is unambiguous, the court must enforce the restriction as written. *Corna, supra*, at ¶ 38. Under the circumstances presented in the case *sub judice*, had the trial court determined instead that the "savings and loan" restriction was unambiguous and left it alone, presumably it

would have enforced it as is, subject to its subsequent consideration of the issue of waiver or abandonment. In essence, because appellants have expressed no intention of using the Thompson property for anything other than automobile or truck sales, the trial court's partially-expanded reading of the phrase "savings and loan" has not impacted their legal position in this case. As such, we find appellant has failed to demonstrate prejudicial error on this point.

{¶39} Appellants' First Assignment of Error is therefore overruled.

II.

{¶40} In their Second Assignment of Error, appellants contend the trial court erred in enforcing the deed restriction despite it not being part of a "building plan or scheme." We disagree.

{¶41} The disfavor in Ohio towards efforts to restrict land use can be overcome by evidence establishing a general land use plan or scheme as well as notice to the land purchaser of such a general plan or scheme. *Bailey Dev. Corp. v. MacKinnon–Parker, Inc.,* 60 Ohio App.2d 307, 397 N.E.2d 405 (6th Dist.1977), paragraph one of the syllabus. Where an owner of land has adopted a general building scheme or plan for the development of a tract of property, designed to make it more attractive for residential purposes by reason of certain restrictive agreements to be imposed upon each of the separate lots sold, embodying the same in each deed, such agreements will generally be upheld provided the same are not against public policy. *Polaris Owners Assn., Inc. v. Solomon Oil Co., supra*, ¶ 52, quoting *Dixon v. Van Sweringen Co.,* 121 Ohio St. 56, 166 N.E. 887 (1929), paragraph one of syllabus. However, unlike the situation *sub judice*, this issue is often discussed in the context of tract developments or housing subdivisions.

*See*, *e.g.*, *Heldman Terrace Property Owners Association v. D.J.T., Inc.*, 6th Dist. Lucas No. L-00-1330, 2001 WL 574944, citing *Prestwick Landowners' Association v. Underhill* (1980), 69 Ohio App.2d 45, 49 and *Bailey*, *supra*, at 310.

**{¶42}** "In Ohio, restrictive covenants become unenforceable when there has been a waiver or abandonment of the restrictions." *Santora v. Schalabba*, 8th Dist. Cuyahoga No. 80291, 2002-Ohio-2756, ¶ 10, citing *Romig v. Modest*, 102 Ohio App. 225, 142 N.E.2d 555 (2nd Dist.1956). As further discussed *infra*, the test often used to overcome waiver is whether there is still a "substantial value" in the restriction which ought to be protected. However, as we have previously recognized, "[t]he substantial value of a restrictive covenant *can be* supported through evidence of a building plan or scheme." *Stars of Cleveland, supra,* at ¶ 33 (emphasis added). In other words, a "building plan or scheme" analysis is just one path toward resolving the question of "substantial value" and, potentially, a finding of lack of waiver or abandonment of a deed restriction.

**{¶43}** We thus reject appellants' implication in the present case that appellee was required to demonstrate the existence of a building plan or scheme in order for the trial court to enforce the deed restriction.

**{¶44}** Appellants' Second Assignment of Error is therefore overruled.

III.

**{¶45}** In their Third Assignment of Error, appellants challenge the trial court's limited findings concerning a general land use plan or scheme as unsupported by sufficient evidence.

**{¶46}** Appellants urge that appellee failed to present any evidence that at the time of the creation of the deed restriction, there existed a general plan or scheme to protect

the mall's "visibility" to potential customers, taking exception to the following conclusions of the trial court:

In this case, the Court finds that visibility of the Mall from State Street is, and, based upon the size restriction contained in the deed restriction, always has been a concern of its owners. Because of this concern, there is no 'building plan or scheme' for the development of the mall, other than to take measures to increase its visibility from State Street, such as the installation of an LED sign and the removal of trees.

**{¶47}** Judgment Entry at 10.

**{¶48}** We reiterate that an appellant, in order to secure reversal of a judgment, must generally show that a recited error was prejudicial. *See Tate v. Tate,* 5th Dist. Richland No. 02–CA–86, 2004–Ohio–22, ¶ 15, citing *Ames v. All American Truck & Trailer Service,* 6th Dist. Lucas No. L–89–295, 1991 WL 16509. Based on our analysis under appellants' Second Assignment of Error, we find no prejudicial error warranting reversal on this point.

**{¶49}** Accordingly, appellants' Third Assignment of Error is overruled.

IV.

**{¶50}** In their Fourth Assignment of Error, appellants contend the trial court's determination that the Alliance Foundation's use of the Thompson property was consistent with the restrictive covenant, and that waiver of the deed restriction had not occurred, was not supported by sufficient evidence. We disagree.

**{¶51}** Generally, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the

fact finder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 2010–Ohio–3489, 936 N.E.2d 1013 (5th Dist.), ¶ 16, citing *Cross Truck Equipment Co. v. Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA–5758, 1982 WL 2911. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Tate v. Tate*, 5th Dist. Holmes No. 17CA004, 2018-Ohio-1244, ¶ 101, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 19. Our standard of reviewing the sufficiency of the evidence in a civil case is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent and credible evidence. *Moran v. Gaskella,* 5th Knox No. 2011–CA–21, 2012–Ohio–1158, ¶ 12, citing *Technical Constructions v. Cooper,* 8th Dist. Cuyahoga No. 96021, 2011–Ohio–5252, ¶ 14.

**{¶52}** This Court has previously held that when there has been a general acquiescence in the violation of the restriction, the restriction is rendered unenforceable. *Emerald Estates Homeowners Assn., Inc. v. Albert*, 5th Dist. Stark No. 2009CA00072, 2009-Ohio-6627, ¶ 32, citing *Colonial Estates Home Owners Association, Inc. v. Burkey*, 5th Dist. Tuscarawas No. 97AP020013, 1997 WL 34724487. However, as a counterbalance to this rule, we have recognized that the test in Ohio on the question of whether a restriction has been waived or abandoned is whether in spite of the violations, there is still a substantial value worth protecting by enforcing the restrictions. *See Trautwein v. Runyon*, 5th Dist. Delaware No. 94-CA-E-11-032, 1995 WL 498951. *See, also*, *Landen Farm Community Services v. Schube* 78 Ohio App.3d 231, 235 (12th

Dist.1992), citing *Romig v. Modest*, 102 Ohio App. 225, 230 (2nd Dist.1956). A party alleging a waiver and/or abandonment has the burden of proving his or her allegations. *Id.* at paragraph four of the syllabus.

{¶53} In reaching its conclusions on the issue of "substantial value" in the case *sub judice*, the trial court first reviewed the early history of the subject deed restriction, noting that in 1981, the Carnation Mall property was owned by Midland Service Corporation. Judgment Entry at 8. The court noted that at that time, Midland had entered into an option agreement with R.G. Sproul and Associates, providing Midland the right to purchase a 1.0-acre parcel of land (now the Thompson property) for $50,000.00 should Sproul exercise an option to purchase the mall property. *Id.* The option agreement further allowed Midland, upon obtaining the 1.0-acre parcel, to construct a savings and loan branch office of maximum size 750 square feet on the parcel, with any other use subject to the written permission of Sproul. *Id.* Midland also reserved the right to lease space *inside* the mall, with the option agreement further providing that if Midland so exercised its right to lease space in the mall, Sproul would not sell or lease any other parcel to another savings and loan entity during Midland's mall tenancy. *Id.* The trial court thus observed: "When Midland Service Corporation opted to construct its offices on the outer parcel as opposed to leasing space in the mall, the deed restriction was created." *Id.*

{¶54} The trial court went on to determine as follows:

*** [T]his Court finds that the fact that the restriction regarding building size and nature of the use of the property was put into the General Warranty deed from the Mall to Midland Services Corporation *after* Midland

Services Corporation had elected to build on the outparcel as opposed to leasing space within the mall demonstrates that the restriction was, in fact, for the benefit of the Mall. The Court further finds that the restriction on building size and nature of the use of the property manifests the Mall's intention of allowing a banking, and, therefore, non-competitive, business to operate on the property without obstructing the Mall's visibility from State Street.

**{¶55}** Judgment Entry at 9, emphasis in original.

**{¶56}** Ultimately, the trial court concluded that "*** because the deed restriction limits the size of any building that might be placed in front of the mall which would interfere with its visibility from State Street, and because it limits the nature of operation of that building to that of a banking institution which would not compete with the retail nature of the Mall, the Court finds that the deed restriction at issue is of 'substantial value' to the Mall." *Id.* at 11.

**{¶57}** A review of the trial record reveals that Lisa Poole, the manager and marketing director of the Carnation Mall from 2008 to 2014, recalled that visibility and accessibility of the mall facility was an ongoing concern for her. Tr. at 28. The visibility and accessibility factors, for example, drove her decision to erect a large LED sign at the main entrance to the mall. Tr. at 29. She stated that between 20,000 and 29,000 cars would pass by on West State Street daily. *Id.* Andrea Foley, the present manager and marketing director of the mall, compared visibility with "product placement" for a retailer, noting mall tenants never say they "don't want visibility." Tr. at 64. Foley also expressed concern about a truck lot being distracting to passersby. Tr. at 64-65. Derek Ferguson

recounted as an example the decision of Kay Jewelers to place its store on the street frontage instead of inside the mall: "I bet you they're paying ten times what we were going to lease [the mall space] to them for inside, but they weren't interested because *** they didn't have the visibility." Tr. at 160. However, we also must recognize the testimony of Joseph Mazzola, Alliance's director of planning and development, called as a witness by appellants, who opined: "Professionally, I thought [the proposed truck sales business] could only help the mall." Tr. at 116.

**{¶58}** Upon review, we find the trial court's determination of "substantial value" was supported by sufficient evidence, and the court's utilization of that finding to overcome the application of waiver of the deed restriction was not in error, despite the Alliance Foundation not using the building for savings and loan or other banking operations from 2000 to 2013.

**{¶59}** Appellants' Fourth Assignment of Error is overruled.

V.

**{¶60}** In their Fifth Assignment of Error, appellants contend the trial court erred as a matter of law by failing to conclude that the deed restriction is "outmoded" because of the change in the savings and loan business, and is therefore unenforceable. We disagree.

**{¶61}** If a restrictive covenant's language is indefinite, doubtful, and capable of contradictory interpretations, the court must construe the covenant in favor of the free use of land. *Farrell v. Deuble,* 175 Ohio App.3d 646, 2008–Ohio–1124, 888 N.E.2d 514 (9th Dist.), ¶ 11, citing *Houk v. Ross,* 34 Ohio St.2d 77, 296 N.E.2d 266 (1973), paragraph two of the syllabus.

**{¶62}** In the case *sub judice*, appellants presented the testimony of banking expert Stephen Hailer. He noted *inter alia* that there are only about nine savings and loans left in Ohio, none of which has a branch in Alliance, and there are no new savings and loans being created. Tr. at 261, 265-266. He added that those existing savings and loans that do exist offer different services than the savings and loans that existed at the time the restrictive covenant was drafted, including expansion into commercial lending and other types of investments. Tr. at 265.

**{¶63}** However, as appellee points out at other points in its response brief, appellants obtained a substantial discount in price on the land purchase due to the deed restriction, which was clearly known to all the parties involved in the transaction. While certain aspects of the banking industry have undergone great changes since the early 1980s, savings and loan institutions have not become extinct, and we cannot conclude that the trial court erred as a matter of law in refusing to strike the deed restriction at issue as outmoded.

**{¶64}** Appellants' Fifth Assignment of Error is therefore overruled.

VI.

**{¶65}** In their Sixth Assignment of Error, appellants contend the trial court erred as a matter of law by allegedly giving appellee "unfettered discretion" in controlling the use of the property. We disagree.

**{¶66}** We have cautioned against deed restrictions too broad in scope allowing too much control over property vested in the hands of someone other than the owner of the property. *See Wingate Farms Owners Assn. v. Sankarappa,* 5th Dist. Delaware No. 11–CAE–05–0041, 2012–Ohio–14, ¶ 42. However, as noted in our recitation of facts,

the trial court in this instance enjoined appellants from using the property "in any manner inconsistent" with the deed restriction. *See* Judgment Entry at 12.

**{¶67}** Appellants herein fail to persuade us that the ruling at issue placed unlawful discretion in the hands of appellee concerning the use of the property.

**{¶68}** Appellants' Sixth Assignment of Error is therefore overruled.

VII.

**{¶69}** In their Seventh Assignment of Error, appellants maintain the trial court's injunction entered is invalid because it does not describe in reasonable detail the act or acts to be restrained. We disagree.

**{¶70}** The standard of review for the grant of injunctive relief is whether the trial court abused its discretion. *Control Data Corp. v. Controlling Bd.* (1983), 16 Ohio App.3d 30, 35. The allowance of an injunction rests within the sound discretion of the trial court and depends upon the facts and circumstances surrounding the case. *Perkins v. Quaker City* (1956), 165 Ohio St. 120. The term abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217.

**{¶71}** As noted previously, the trial court enjoined appellants "from using the [Thompson] property in any manner inconsistent" with the deed restriction. Appellants, relying on Civ.R. 65(D), urge that this language makes it "impossible" for an ordinary person to determine what activities would result in a violation of the injunction, particularly given the court's ruling that general banking institution activities would be permissible on the property.

{¶72} Upon review, we find no merit in appellants' aforesaid assertions. Appellants' Seventh Assignment of Error is therefore overruled.

{¶73} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, P. J.

Gwin, J., and

Hoffman, J., concur.

JWW/d 0606